UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Nelda Kellom, as Personal Representative
of the Estate of Terrance Kellom, *et al.*,

       Plaintiffs,

v.                                   Case No. 17-11084

Mitchell Quinn, *et al.*,                 Sean F. Cox
                                          United States District Court Judge

       Defendants.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Nelda Kellom is the personal representative of a man who was allegedly shot and killed when a United States Marshal Detroit Fugitive Apprehension Team was attempting to arrest him at a house in Detroit, Michigan on April 27, 2015.

After one motion to dismiss was ruled upon, Plaintiff's Counsel filed a First Amended Complaint, that added both named parties and claims. The matter is currently before the Court on a second round of motions to dismiss, as the following three motions to dismiss challenge the First Amended Complaint: 1) a Motion to Dismiss filed by Defendants City of Detroit, Craig, Eaton, and Fitzgerald (D.E. No. 34); 2) a Motion to Dismiss filed by the United States (D.E. No. 35); and 3) a Motion to Dismiss Certain Counts filed by Defendant Quinn (D.E. No. 36). The motions have been fully briefed and the Court heard oral argument on August 23, 2018. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART each of these motions.

More specifically, the Court DENIES the motions filed by Defendants to the extent that the Court:

1)    concludes that the Estate exhausted administrative remedies before filing its FTCA claims against the United States;

2)    declines to dismiss the *Steagald* claim asserted by the Decedent's parents in Count VII, as to Defendants Quinn and Eaton, on the ground that exigent circumstances warranted entry without a search warrant, based on the pleadings;

3)    declines to dismiss the municipal liability count against the City and Chief Craig (in his official capacity) based on the pleadings.

The Court  GRANTS the three motions to dismiss filed by Defendants to the extent that the Court:

1)    dismisses Count VII against the United States because the United States has not waived sovereign immunity as to alleged violations of the Constitution;

2)    dismisses Counts V & VI without prejudice, as to the "Non-Estate Plaintiffs" because they failed to exhaust administrative remedies prior to filing FTCA claims against the United States;

3)    dismisses Count IV (the *Bivens* Conspiracy claim) because that claim is not cognizable as to the Estate, as the First Amended Complaint expressly alleges that the conspiracy began *after* the Decedent's death;

4)    dismisses all "Non-Estate Plaintiffs" from all remaining counts, except Count VII, because they lack standing to assert those claims, because unlike the Estate they cannot assert a claim based on a violation the Decedent's constitutional rights;

5)    dismisses Counts II & VIII as to Eaton and Fitzgerald as Plaintiffs now agree that should be done;

6)    dismisses Count III for failure to identify a racial or other class-based invidious or discriminatory animus underlying the alleged conspirators actions;

7)    dismisses any claims asserted against Chief Craig in his individual

capacity because the First Amended Complaint includes no allegations as to his personal involvement, and because Plaintiffs' Counsel stated during oral argument that no claims are brought against Craig in his individual capacity; and

8)     dismisses Count VIII (municipal liability claim) against officers Eaton and Fitzgerald because, as Plaintiffs' Counsel agreed during oral argument, there is no basis for a municipal liability claim to be asserted against them.

## BACKGROUND

On April 6, 2017, Plaintiff Nelda Kellom, as Personal Representative of the Estate of Terrance Kellom, Deceased ("the Estate"), filed this action. The Estate's original complaint named the following Defendants: 1) Immigration and Customs Enforcement Agent Mitchell Quinn; 2) Detroit Police Officer Darell Fitzgerald; and 3) Detroit Police Officer Treva Eaton. Plaintiff's original complaint included the following four counts: 1) "*Bivens* Claim" (Count I); 2) "42 U.S.C. § 1983 – Excessive Force and/or Unlawful Use of Deadly Force" (Count II); 3) "§ 1983 Conspiracy by Defendants" (Count III); and 4) "Wrongful Death [under] Michigan Wrongful Death Act, Mich. Comp. Laws § 600.2922 *et seq*," (Count IV).

On February 6, 2018, this Court issued the Scheduling Order in this matter that provides, among other things, that: 1) that amendments to pleadings were to be made by April 16, 2018; 2) that discovery would close on November 16, 2018; and 3) dispositive motions had to be filed by December 16, 2018. (D.E. No. 21).

In an Opinion & Order issued on March 27, 2018, this Court granted a Motion for Partial Dismissal filed by Defendant Quinn. The Court: 1) granted the motion to the extent that it dismissed that portion of Count I that asserted a claim against Quinn based upon an alleged violation of the Fourteenth Amendment; and 2) granted the motion as to Count III, dismissing the § 1983 claim against Quinn. In addition, the parties stipulated that the United States would

be substituted for Quinn as to the wrongful death claim.

On April 16, 2018, Plaintiff's Counsel filed a motion seeking leave to file an amended complaint. Thereafter, Defendants filed responses indicating that, while they do not concede that the claims asserted against them are valid and that they may file motions challenging the claims asserted against them, they do not oppose the motion to amend. Thus, on May 3, 2018, the Court issued an order granting leave to file a First Amended Complaint.

On May 4, 2018, Plaintiff filed a First Amended Complaint (D.E. No. 32) which added named parties and claims.

In addition to the Estate, seven of the Decedent's family members now assert claims in Plaintiffs' First Amended Complaint. Those "Non-Estate Plaintiffs" include: 1) the Decedent's mother in her individual capacity (Nelda Kellom); 2) the Decedent's father, Kevin Kellom; 3) the Decedent's two adult sisters (Teria Kellom and Lawanda Kellom) and his adult brother (Terrell Kellom); and 4) the Decedent's two minor children, joined in the lawsuit through their mother and personal representative, Janay Williams.

The parties later agreed that the United States would be substituted for Defendants Eaton and Fitzgerald at to Counts V and VI. (*See* D.E. No. 41).

Accordingly, Plaintiffs' First Amended Complaint now asserts the following claims: 1) a *Bivens* claim, asserted by the Estate and the Non-Estate Plaintiffs, against Defendants Eaton, Fitzgerald, and Quinn (Count I); 2) a § 1983 excessive force claim, asserted by the Estate, against Defendants Eaton and Fitzgerald (Count II); 3) a § 1985 conspiracy claim, asserted by the Estate and the Non-Estate Plaintiffs, against Defendants Eaton and Fitzgerald; 4) a *Bivens* conspiracy claim, asserted by the Estate and the Non-Estate Plaintiffs, against Defendants Eaton,

Fitzgerald, and Quinn (Count IV); 5) a wrongful death claim under Michigan law, asserted by the Estate and the Non-Estate Plaintiffs, against the United States (in place of Defendants Quinn, Eaton, and Fitzgerald) (Count V); 6) an intentional infliction of emotional distress claim under Michigan law, asserted by the Estate and the Non-Estate Plaintiffs, against the United States (in place of Defendants Quinn, Eaton, and Fitzgerald) (Count VI); 7) a *Steagald* violation claim, asserted by Plaintiffs Kevin Kellom and Teria Kellom, against all Defendants (Count VII); and 8) a § 1983 *Monell* Liability claim, asserted by the Estate and the Non-Estate Plaintiffs, against Craig, Eaton, Fitzgerald, and the City of Detroit (Count VIII).

There are currently three motions to dismiss pending before the Court, that were all heard by the Court on August 23, 2018.

## ANALYSIS

I.      **The Motion To Dismiss Filed By The United States**

The United States filed a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction.). In this motion, the United States presents two issues.

A.      **Should The Court Dismiss The *Steagald* Claim (Count VII) Against The United States Because The United States Has Not Waived Sovereign Immunity As To Alleged Violations Of The Constitution?**

Noting that the First Amended Complaint asserts Count VII against "all defendants," the United States construes it as being asserted against it. The United States now asks the Court to dismiss Count VII as to it, asserting as follows:

> The United States is immune from suit unless it waives its sovereign immunity, *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981), and the Supreme Court has explicitly held that the United States has not waived its immunity from suits for damages based on constitutional violations. *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994). Accordingly, the United States is immune from plaintiffs' *Steagald* claim, which is based on an alleged violation of the Fourth Amendment.

(D.E. No. 35 at Pg ID 328).

Plaintiffs' response states that they "disagree with Defendant United States' argument that Claim VII must be dismissed." (*Id*. at Pg ID 471). Plaintiffs' brief then states "Plaintiffs do not bring their *Steagald* claim under the Federal Tort Claims Act" and then claims that the "United States entered into this lawsuit but is now trying to have its cake and eat it too." (*Id.* at Pg ID 471). That argument goes nowhere because: 1) Plaintiffs do not dispute that Count VII asserts a claim for a constitutional violation; and 2) Plaintiffs do not provide any authority to establish that the United States has waived sovereign immunity for such claims.

"The United States as a sovereign is immune from suit for money damages unless it unequivocally has waived such immunity." *Blakely v. United States*, 276 F.3d 853, 870 (6th Cir. 2002). This Court lacks jurisdiction over Plaintiffs' claim against the United States in Count VII. The United States has not waived sovereign immunity in *Bivens*-type actions brought against the United States, and thus the constitutional tort claim asserted in Count VII against the United States is precluded by sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994); *Blakely,* 276 F.3d at 864-65*; Nuclear Transport & Storage, Inc. v. United States*, 890 F.2d 1348, 1352 (6th Cir. 1989); *Fountain v. West Point Military Academy,* 892 F.2d 1043 (6th Cir. 1990); *Jackson v. United States*, 114 F.3d 1187 (6th Cir. 1997).

    **B.**    **Should The Court Dismiss The Wrongful Death And IIED Claims (Counts V & VI) Against The United States For Failure To Exhaust Administrative Remedies Under The FTCA?**

As noted above, sovereign immunity prevents suits against the United States without its consent. "The Federal Tort Claims Act ('FTCA') waives sovereign immunity for certain actions in tort by giving district courts exclusive jurisdiction over those types of civil actions." *Premo v.*

*United States*, 599 F.3d 540, 544 (6th Cir. 2010).

It is well-established, however, that the "FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). There are several basic concepts as to exhaustion under the FTCA that are relevant here.

The FTCA provides that "[a]n *action shall not be instituted* upon a *claim against the United States* for money damages for injury or loss of property or personal injury or death cause by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency* in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a) (emphasis added); *see also* 28 U.S.C. § 2401(b) ("A tort claim *against the United States* shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . .") (emphasis added).

The statute further provides, however, that the "failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim." *Id.* But once there has been an actual denial of the administrative claim, the claimant must file suit in federal court within six months. 28 U.S.C. § 2401(b).

When a claimant "prematurely" files a FTCA lawsuit (ie., when the claimant files it before the denial of an administrative claim), then the federal court lacks subject matter jurisdiction over the action and it must be dismissed. *McNeil v. United States*, 508 U.S. 106

(1993).

In *McNeil,* the plaintiff filed suit asserting a FTCA claim on March 6, 1989.  Four months later, on July 7, 1989, he submitted his administrative claim.  The district court dismissed for failure to exhaust and the Ninth Circuit affirmed noting that the complaint filed on March 6, 1989 was "too early" and explaining that "[u]nless McNeil began a *fresh suit* within six months after July 21, 1989, he loses."  *Id*. at 110 (emphasis added).  Because some circuits were permitting "a prematurely filed FTCA action to proceed if no substantial progress has taken place in the litigation before the administrative remedies are exhausted," the Supreme Court granted certiorari to resolve the conflict.  *Id*. The Court held that the statute requires complete exhaustion of administrative remedies "before invocation of the judicial process," and explained that "[e]very premature filing *of an action under the FTCA* imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions."  *Id*. at 113 (emphasis added).

Following *McNeil*, several courts have ruled that "premature" FTCA suits cannot be cured by virtue of filing an amended complaint in the same action, after the administrative claim is denied.  Rather, in such situations, a new lawsuit must be initiated within the applicable six-month time period for filing suit after the denial.  *See, e.g., Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("as a general rule, a premature 'complaint cannot be cured through amendment, but instead, plaintiff must file a new suit.");  *Sherman v. United States*, 48 F. Supp.3d 1019, 1024 (E.D. Mich. 2014);  *VanHorn v. Walton*, 2013 WL 119252 at *2 (E.D. Mich. J. Steeh);  *Sparrow v. USPS*, 825 F.Supp. 252, 254-55 (E.D. Calf. 1993).

The Government asserts that Plaintiffs failed to exhaust the FTCA's administrative

remedies for their tort claims against the United States (Counts V & VI) before filing this suit, when the Estate did not submit an administrative claim until a month after filing this suit and the remaining plaintiffs have never initiated the administrative process. (D.E. No. 35 at Pg ID 318).

In response to the Government's motion, Plaintiffs take the position that: 1) their original complaint did not assert a FTCA claim or name the United States as a Defendant; and 2) only Plaintiffs' filing of the First Amended Complaint on May 5, 2018 asserted a FTCA claim or names the United States and that they had exhausted their administrative remedies before that date. (D.E. No. 44 at Pg ID 472).

This Court agrees that if the original complaint filed by the Estate asserted a FTCA claim against the United States, then it would have been premature because it was filed on April 6, 2017, before the Estate had even filed its administrative claim. If such a premature complaint had been filed by the Estate, then the Estate would have to file a new lawsuit after the denial of its administrative complaint, not an amended complaint in this action. In addition, if that were the case, because the Estate's administrative denial occurred on February 1, 2018, a new lawsuit would have had to have been filed by the Estate by August 1, 2018. Accordingly, if the Estate's original complaint asserted a FTCA against the United States, the Court would have to dismiss this action for lack of subject matter jurisdiction and, because August 1, 2018 has now passed, the Estate's wrongful death claim would be time-barred.

That brings us what appears to be the real issue – whether the Estate's original complaint asserted FTCA claims against the United States.

Again, Plaintiffs's Counsel asserts that the Estate's original complaint did not assert FTCA claims or name the United States as a Defendant. He contends that the Estate exhausted

its administrative remedies prior to the filing of the First Amended Complaint, which did name the United States as a Defendant and did invoke jurisdiction under the FTCA. The Estate therefore takes the position that its FTCA claims against the United States were first raised in the First Amended Complaint, after exhaustion, and therefore the Estate was not required to file a new action after the denial of the Estate's administrative claim.

In its Reply Brief, the Government takes the position that "the Estate's initial complaint contained an FTCA claim, although the Estate pleaded it improperly." (D.E. No. 47 at 499).

This Court has not found any Sixth Circuit cases directly on point as to this issue. However, a published Ninth Circuit case, *Valadez-Lopez v. Chertoff*, 656 F.3d 851 (9th Cir. 2011), and a decision by Judge Ludington that relies on it, *Walters v. Mercy Hospital Grayling*, 2013 WL 5775367 (E.D. Mich. 2013), addressed this same scenario and support the Estate's position.

In *Valadez-Lopez,* the Ninth Circuit considered "whether plaintiff properly exhausted his administrative remedies" under the FTCA "where the federal agencies denied the plaintiff's administrative tort claims before he amended his complaint in an ongoing civil action to name the United States as a party and allege a new cause of action under the Act." *Id.* at 854. In that case, the plaintiff "initially filed suit against local officials under § 1983 and federal officials under *Bivens*" and "separately filed administrative tort claims with the appropriate federal agencies, pursuant to the FTCA's exhaustion requirement." *Id.* When the plaintiff had not received a decision as to his administrative claims within six months, he deemed them denied and "amended his complaint to name the United States as a defendant and allege liability under the FTCA." The district court granted a motion to dismiss filed by the Government and

dismissed the FTCA claims for failure to exhaust.  The plaintiff appealed.

The Ninth Circuit held that the district court erred in concluding that the plaintiff failed to exhaust administrative remedies.  In doing so, the court explained that the plaintiff's "original complaint *neither named the United States as a defendant nor stated a claim under the Act*.  He only amended his complaint to name the United States and include an FTCA cause of action after the government had failed to respond to his administrative claims within six months." *Id*. at 855 (emphasis added).  It found that, under the plain language of the statute, the plaintiff "exhausted his administrative remedies before instituting "a claim against the United States" under the FTCA.  As such, the plaintiff's claims were administratively exhausted.  *Id.*

The Ninth Circuit further rejected the government's argument "that the court is required to dismiss the FTCA claim in the amended complaint and to require the plaintiff to file an entirely new lawsuit founded on the same nucleus of facts."  *Id*. at 856.  The court found that position without support in either the plain language of the statute or Ninth Circuit case law and explained:

> There is nothing in the statute or our case law that would prevent a plaintiff from *amending an existing complaint asserting non-FTCA claims to name the United States as a defendant and include FTCA claims* once those claims have been administratively exhausted.
> The cases cited by the government are inapposite, because they involve the circumstance in which a plaintiff filed an FTCA lawsuit before exhausting his or her FTCA administrative remedies.
> . . . .
> *McNeil* does not control the outcome here, where [the plaintiff] "invoked the federal court's jurisdiction under the FTCA" in his amended complaint after he exhausted his administrative remedies.  *Id*. at 108, 113 S.Ct. 1980.

*Id.* (emphasis added).  In a footnote, the court explained that the government was incorrect to rely on a series of cases, including one relied on by the Government here, as in each of those

cases, "the plaintiff's original complaint, filed before administrative remedies were exhausted, sought 'redress from the government pursuant to the FTCA.'" *Id*. at 856 n.1.

In *Walters,* Judge Ludington relied on *Valadez-Lopez* in concluding that the plaintiff had exhausted her administrative remedies under the FTCA. There, the plaintiff filed suit against her doctors and their employers in state court on June 19, 2013. "While Plaintiff's case was pending in state court, HHS denied her administrative claim on July 1, 2013." *Id*. * 2. At the end of July, the United States filed a notice of removal. *Id.* "Although not identified as a defendant, the United States filed a notice of removal pursuant to 42 U.S.C. § 233 and 28 U.S.C. § 2679(d). The United States removed the case because Defendants Jeffrey D. Strickler and Dana R. Brackins were 'deemed' employees of the United States and thus eligible for coverage under the Federal Tort Claims Act." *Id.* at *1. "Because the United States is the only proper defendant in an FTCA action," the district court "accepted the parties' stipulation substituting the United States as a defendant in place of" the federal employees and entities on August 8, 2013. *Id*. at * 2

The government filed a motion to dismiss, asserting that the plaintiff has failed to exhaust her administrative remedies. The district court denied the motion, explaining:

> Here, Plaintiff properly exhausted her administrative remedies as required by the FTCA. Plaintiff's original state-court complaint *neither named the United States as a defendant nor stated a claim under the FTCA*. Rather, the original complaint alleged state law negligence claims against Plaintiff's doctors and their employers. Plaintiff's administrative complaint was "finally denied by" HHS on July 1, 2013, more than a month before the original parties substituted the United States as a Defendant. Only after HHS's final denial did the Plaintiff assert an FTCA claim against the United States. Therefore, Plaintiff properly exhausted her administrative remedies before instituting an action against the United States pursuant to FTCA. *See Valadez-Lopez v. Chertoff*, 656 F.3d 851 (9th Cir. 2011).

*Id*. at * 3 (emphasis added). The district court further noted that the "Government's reliance on

*McNeil* is inapposite because that case involved a plaintiff that filed an FTCA claim before

exhausting his FTCA administrative remedies.  In *McNeil,* the Supreme Court explained that

"[e]very premature filing of *an action under the FTCA* imposes some burden on the judicial

system."  *McNeil* at 112 (emphasis added)."  *Id.*  When, as here, the plaintiff "invoked the

federal court's jurisdiction under the FTCA" after she exhausts her administrative remedies,

*McNeil* does not control."  *Id.*

There is a rather long sequence of events in this case that relate to this issue, but the

Court ultimately concludes that the Estate exhausted its claims.

The Estate filed the original complaint on April 6, 2017.  Notably, it did not name the

United States as a defendant and it did not assert any claims under the FTCA.  It asserted claims

against federal and state officers, and included a wrongful death claim under Michigan law.

On April 25, 2017, the Estate filed an administrative claim.  (*See* Ex. 2 to the Govt.'s

Br.).  That claim was asserted on behalf of "Nelda Kellom, as personal representative of

Deceased Terrance Kellom," and did not assert claims on behalf of any other parties.

On October 16, 2017, Defendant Quinn filed a Motion for Partial Dismissal, and attached

a Certificate of Scope of Employment as to Quinn as an exhibit to the motion.  The motion

asserted that the United States should be substituted for Quinn as to the wrongful death claim.

As of October 25, 2017, six months had passed since the Estate filed its administrative

claim.  As such, by statute, the Estate can deem it denied as of October 25, 2017.

On November 17, 2017, the Estate filed a response in opposition to Defendant Quinn's

motion, *disputing* that Quinn was acting within the scope of his employment as it relates to his

alleged actions in shooting an unarmed man.  The Estate argued that the United States *should not*

be substituted for Quinn, and noting that certificates are conclusive for purposes of removal but are rebutable for purposes of defendant substitution.  *See Arbour v. Jenkins,* 903 F.2d 416, 421 (6th Cir. 1990).

On February 1, 2018, the Estate's administrative claim was actually denied.  Thus, the Estate had until August 1, 2018 to file a FTCA claim against the United States.

On March 9, 2018 – after the Estate's administrative complaint had been deemed denied and had actually been denied – a Notice of Substitution was filed on the docket by the United States, stating that the United States is hereby substituted for Defendant Quinn as to the wrongful death claim.  (D.E. No. 22).  At that time, the Estate still disputed the requested substitution.

But on March 22, 2018, the Court held a hearing on Defendant Quinn's Motion for Partial Dismissal, at which time Counsel for the Estate agreed that the United States should be substituted for Quinn as to the wrongful death claim, and a stipulated order to the effect was entered that same day.  (D.E. No. 23).  Thus, as of March 22, 2018, the Estate was asserting the wrongful death claim against the United States.  That was *after* the Estate's administrative claim had been both constructively and actually denied.

On May 4, 2018, Plaintiffs filed a First Amended Complaint, that named the United States as a Defendant and invoked jurisdiction under the FTCA.  It included the wrongful death claim (Count V) and also added another tort claim, a claim for intentional infliction of emotional distress (Count VI).

On June 22, 2018, the parties stipulated to substituting the United State for Defendants Fitzgerald and Eaton as to Counts V & VI.

Accordingly, after the Estate's administrative claim had been denied, but before the

August 1, 2018 deadline for filing a FTCA action based on its administrative claim, the Estate

asserted FTCA claims against the United States.  Based on this sequence of events, the Court

will not dismiss the Estates's claims in Counts V & VI for failure to exhaust administrative

remedies.

Nevertheless, the Court concludes that all Non-Estate Plaintiffs failed to exhaust their

administrative remedies prior to filing the First Amended Complaint.  Thus, as Plaintiffs'

Counsel acknowledged at the hearing, Counts V & VI must be dismissed as to the Non-Estate

Plaintiffs for failure to exhaust administrative remedies.

## II.    Defendant Quinn's Motion To Dismiss

In a Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(6), Quinn recognizes that the

Estate's *Bivens* claim against him in Count I should proceed to discovery, but he asserts that the

remaining claims against him should be dismissed.  Quinn also asserts that the "Non-Estate

Plaintiffs" lack standing to assert claims under Counts I and IV.

### A.    Does The *Bivens* "Cover-Up" Conspiracy Claim Fail Because Such Claims On Behalf Of Decedents Are Not Legally Valid?

In Count IV, the *Bivens* Conspiracy Claim brought by the Estate and the other Plaintiffs,

Plaintiffs alleges as follows:

> 72.    *Upon Defendants realizing that Terrance Kellom was unjustly murdered, they intentionally conspired with each other and possibly others to cover-up their unlawful and unconstitutional acts* by providing false and fictitious information to the authorities and to the media regarding the shooting of Terrance, including falsely claiming that warrants were presented, that Terrance threatened Defendant Quinn with a hammer, and that the discharge of the firearm was the result of a reasonable fear of harm.
> 73.    Defendants acted in concert to cover-up the facts and circumstances of the fatal shooting of Terrance Kellom.
> 74.    *As soon as Defendants realized that they had wrongfully killed Terrance,*

> *they mutually, either tacitly or overtly, agreed to commence a conspiracy to cover-up the facts of what they had done.*

75. Defendants' conspiracy sought to deprive Plaintiff Terrance Kellom and his family of their constitutional rights.

76. At all times herein, the aforementioned conspiracy had among its purpose to violate Plaintiffs' constitutional and/or common law rights. As a consequence, Plaintiffs claim a violation of their rights pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 US 388, 91 S. Ct. 1999 (1971).

(First Am. Compl., D.E. No. 32, at Pg ID 258-59) (emphasis added).

In the pending motion, Defendant Quinn asserts that the cover-up conspiracy claim asserted in Count IV must be dismissed because such claims on behalf of decedent's are not legally valid. Citing several cases, Quinn argues that "the constitutional rights of a decedent end at his death, and as a result, allegations of a conspiracy to cover-up the nature of a person's death are legally deficient in the context of *Bivens* and 42 U.S.C. § 1983." (Quinn's Br., D.E. No. 36, at Pg ID 368). Quinn directs the Court to *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 748-49 (10th Cir. 1980); *Guyton v. Phillips*, 606 F.2d 248, 250-51 (9th Cir. 1979); and *Ford v. Moore*, 237 F.3d 156, 165 (2d Cir. 2001).

In *Guyton*, the Ninth Circuit considered the issue of whether § 1983 "affords a cause of action on behalf of a deceased for acts occurring after the death of that person," and held that it does not. *Guyton*, 606 F.2d at 250. The court explained:

> We find that the Civil Rights Act, 42 U.S.C. ss 1983 and 1985, does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death. A "deceased" is not a "person" for the purposes of 42 U.S.C. ss 1983 and 1985, nor for the constitutional rights which the Civil Rights Act serves to protect.

*Id*. The Ninth Circuit affirmed the dismissal of a conspiracy claim against the officers,

explaining that "all of the alleged actions" of the defendant officers "occurred after[1] [the decedent's] death and thus were not violations of a 'person's' civil rights." *Id.* at 251. Thus, it ruled that "inasmuch as [the decedent's] civil rights must terminate with his death, so must any conspiracy to deprive him of those rights."

In *Silkwood,* the estate of a decedent asserted a *Bivens* claim against F.B.I. agents, alleging that they became involved in a conspiracy only after the decedent's death, the purpose of which was to cover-up their actions that led to her death. The district court granted summary judgment on that claim, "because the FBI allegedly became involved in the conspiracy only after the death of Karen Silkwood," the decedent, and therefore could not have violated the decedent's rights. *Silkwood,* 637 F.2d at 748-49. In a published opinion, the Tenth Circuit affirmed the dismissal, stating that "[w]e agree with the Ninth Circuit that the civil rights of a person cannot be violated once that person has died." *Id.* (Citing *Guyton, supra*, and other cases). The Tenth Circuit explained that "[i]t is clear that the FBI agents could not have violated the civil rights of [the decedent] by cover-up actions taken after her death." *Id*.

In *Ford,* the Second Circuit also rejected, as legally deficient, "cover-up" conspiracy claims, where the alleged actions taken by the conspirators were all alleged to have occurred after the decedent's death.

Based on the allegations in Plaintiffs' First Amended Complaint, Quinn asserts that the cover-up conspiracy claim asserted in Count IV fails to state a claim against him and the other

---

[1]The court noted that "the situation presented by this appeal should not be confused with that presented when a plaintiff, on behalf of a deceased, challenges actions committed *Before* the deceased's death as violations of the Civil Rights Act" as in the latter case, the cause of action may survive the decedent's death. *Guyton*, 606 F.2d at 250-51 (italics added for emphasis; capitalization of "b" in appearing in original).

officers, because the complaint expressly alleges that the conspiracy did not begin until after the decedent's death.

In response to this motion, Plaintiffs' Counsel asserts that "Plaintiffs allege that Defendants' began conspiring immediately after the shooting of Terrance Kellom, before he was placed in an ambulance, before he was pronounced dead at the hospital, and before one of the Defendants' present at the scene told Plaintiff Kevin Kellom that his son was in 'critical condition.'" (Pls.' Br., D.E. No. 42 at Pg ID 442-43). But there are *no such allegations in Plaintiffs' First Amended Complaint.*

Although this is a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) that is based on the sufficiency of the pleadings, Plaintiffs' Counsel also asserts that Defendants "have shown absolutely *no evidence* that Terrance Kellom was dead before the conspiracy began." (*Id*. at 443) (emphasis added).

In his Reply Brief, Defendant Quinn notes that Plaintiffs' argument "ignores the exact words of their amended complaint," explaining:

> They do not allege that while Terrance Kellom was alive, Defendants conspired to cover up the nature of the shooting. Instead, they state, "[u]pon [] realizing that Terrance Kellom was unjustly murdered, they intentionally conspired with each other and possibly others to cover-up their unlawful and unconstitutional acts . . ." (Dkt. #31, Am. Compl., ¶ 72). Plaintiffs further claim, "[a]s soon as Defendants realized they had wrongfully killed Terrance, they mutually, either tacitly or overtly, agreed to commence a conspiracy . . ." (*Id*. at ¶ 74). Hence, according to the amended complaint, the conspiracy did not begin until after Terrance Kellom was deceased, and the Court should dismiss Count IV.

(D.E. No. 46 at Pg ID 487-88).

The Court shall dismiss Count IV as to Defendant Quinn, as the First Amended Complaint expressly alleges that the conspiracy did not begin until after the decedent's death.

*Silkwood,* 637 F.2d at 748-49; *Guyton,* 606 F.2d at 250-51. Because Defendants Eaton and Fitzgerald raise this same issue, as explained later in this Opinion & Order, that Count must also be dismissed as to them for this same reason.

      **B.**       **Should The Court Dismiss Count VII Against Quinn (And Eaton) Because Exigent Circumstances Existed For Quinn (And Eaton)To Enter The Kellom House Without A Search Warrant?**

In *Steagald*, the United States Supreme Court addressed the issue of whether a "law enforcement officer may legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant." *Steagald v. United States*, 451 U.S. 204, 205-06 (1981). The Supreme Court held "that a search warrant must be obtained absent exigent circumstances or consent." *Id*.

In Count VII, the Decedent's parents (Kevin and Teria Kellom) assert a "*Steagald*" claim. That is, they allege that their home was impermissibly entered by the officers on the date of the incident without a search warrant, even though the officers had an arrest warrant for Terrance Kellom (the Decedent). In Plaintiffs' First Amended Complaint, they allege that on April 27, 2015, various members of the US Marshall Detroit Fugitive Apprehension Team ("DFAT") arrived at the house and set up a perimeter around the house. (First Am. Compl. at ¶¶ 23-25). They allege the house is owned by Kevin Kellom, that Kevin and Teria Kellom reside there, and that Terrance did not reside there. They allege that Officer Fitzgerald and an unknown officer knocked on the door and asked about Terrance's whereabouts. (*Id.* at ¶ 29). They allege that Fitzgerald demanded to search the house, that Kevin and Teria Kellom did not consent to entry, and that Fitzgerald told them he had a search warrant although the officers had no search

warrant.  (*Id.* at ¶ 30-32).  Two other officers of the DFAT then entered the house, and headed upstairs while Fitzgerald remained downstairs.  Plaintiffs allege that after the two officers located Terrance in the attic, "they called for backup."  (*Id.* at ¶ 35).  There are no other allegations as to what was said by the officers who requested backup or even how the request for backup was communicated.  After that, officers Quinn and Eaton are alleged to have entered the house and Plaintiffs allege that Quinn ultimately shot the Decedent while inside the house.  The First Amended Complaint acknowledges that the officers had an arrest warrant for the Decedent, but there are no details about it.

In his motion, Quinn argues that Count VII should be dismissed as to him because, even under the facts alleged in the First Amended Complaint, exigent circumstances existed for him to enter the house once the other officers called for backup.  Defendant Eaton makes the same argument in the motion filed by the City of Detroit Defendants.  The Court will address both challenges together.  Defendants Quinn and Eaton direct the Court to: 1) *Spriggs v. Shanlian*, 2014 WL 1304910 (E.D. Mich. 2014); 2) *Cook v. O'Neill*, 803 F.3d 296 (7th Cir. 2015); and 3) *Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir. 2002).

Here, Plaintiffs' First Amended Complaint alleges that the officers had an unspecified arrest warrant for Terrance and that they entered the home of third parties (Kevin and Teria Kellom) without a search warrant.   If true, the entry is unlawful under *Steagald*, absent exigent circumstances or consent.  The First Amended Complaint alleges that consent was not given.  Thus, if the facts alleged by Plaintiffs are true, the entry by Quinn and Eaton[2] was unlawful unless exigent circumstances existed at the time of entry.

---

[2]Defendant Fitzgerald does not seek dismissal of Count VII.

"Three types of circumstances have traditionally been found to constitute exigent circumstances:" 1) when the officers were in hot pursuit of a fleeing suspect; 2) when the suspect presented an immediate threat to the arresting officers and the public; or 3) when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals. *Ewolski*, 287 F.3d at 501.

In their motions, Defendants Quinn and Eaton assert that exigent circumstances justified their warrantless entry into the home because they entered after other officers entered the house and they were responding to a "call for back up."

None of the cases cited by Defendants support their position that Count VII should be dismissed against these two officers on a motion to dismiss based upon the pleadings. Both *Cook* and *Ewolski*, were decisions that involved *motions for summary judgment*, not a request for dismissal based upon the allegations in the complaint.[3]

The Sixth Circuit case cited by Defendants notes that "the determination of exigent circumstances is normally a question for the jury," but went on to state that in a case where the underlying facts are undisputed, "and where a fact finder could reach but one conclusion," the issue may be decided by the court as a matter of law. *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992). Here, however, the only allegations that Quinn and Eaton direct the Court to in order to establish that exigent circumstances existed are that they were responding to a call for back up. The Court concludes that Count VII should not be dismissed, as to either Quinn or Eaton, based on the allegations in the First Amended Complaint alone.

---

[3]In addition, in *Cook*, one panel member concluded that exigent circumstances did not exist.

**C.  Should The Court Dismiss The Non-Estate Plaintiffs Because They Lack Standing?**

Defendant Quinn also asserts that as to Count I (and Count IV, if it stays in the case), all of the "Non-Estate Plaintiffs" (ie., all Plaintiffs except Nelda Kellom in her capacity as Personal Representative of the Estate of Terrance Kellom) should be dismissed because they lack standing to assert constitutional claims.  This is the same issue as presented by the City of Detroit Defendants, which is discussed below in Section III. A. and the Court will address Quinn's arguments on this issue in that section.

**III.  The Motion To Dismiss Filed By The City Of Detroit Defendants**

In a Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(6), the City of Detroit Defendants raise several challenges to the claims asserted in Plaintiffs' First Amended Complaint.

**A.  Should Counts I-IV Be Dismissed As To All Non-Estate Plaintiffs Because The Fourth Amendment Rights Allegedly Violated Are Personal And May Not Be Vicariously Asserted?**

In the pending motion, the Detroit Defendants assert that Counts I, II, III, and IV should be dismissed against all of the Non-Estate Plaintiffs because the Fourth Amendment rights allegedly violated are personal and may not be vicariously asserted.

Count II, however, is only asserted by "Plaintiff Terrance Kellom," who is the Decedent. (*See* D.E. No. 32 at Pg ID 255).  And Plaintiffs' Counsel states on page 5 of their response brief that Count II is only asserted by the Estate.  Thus, the Court does not have to consider this argument as to that count.

In addition, because Count III should be dismissed for independent reasons discussed in Section III. C., and Count IV should be dismissed for reasons discussed in Section II. A and

22

Section III. D, the Court need only consider this argument as it relates to Count I (*Bivens* claim based on alleged Fourth Amendment violations).

In Count I, Plaintiffs allege that the "actions of Defendants resulting in Terrance Kellom's death without just cause violated *his rights* under the Fourth and Fourteenth Amendment to the United States Constitution as to Defendants Eaton and Fitzgerald, and to be secure in his person against unreasonable search and seizure, excessive force, and the unlawful use of deadly force under the Fourteenth Amendment to the United States, and cause the injuries set forth above. *As well, Plaintiffs with parent-child relations (Nelda and Kevin Kellom, and T.D.K. (minor son) and T.D.K. (minor daughter)) had their rights under the Fourteenth Amendment violated, and all other Plaintiffs had their right to equal protection violated.*" (First. Am. Compl. at ¶ 53) *(emphasis added).*

In his motion, Defendant Quinn notes that the Non-Estate Plaintiffs have not plausibly alleged how their personal rights under the Constitution were violated by him; they have only alleged how the Decedent's rights were violated and the Estate represents the Decedent's interest. He contends that the other named Plaintiffs have no standing to assert claims for the denial of his rights. Quinn directs the Court to *Brown v. United States*, 411 U.S. 223, 230 (1973) and *Reinbold v. Evers*, 187 F.3d 348, 357 n.8 (4th Cir. 1999).

The Detroit Defendants make the same arguments, citing additional cases that support their position that the Non-Estate Plaintiffs have not asserted a viable claim based upon the alleged loss of familial relationships.

Plaintiffs' response to both motions is nearly identical. Plaintiffs' Counsel states that Plaintiffs are not seeking to vicariously assert constitutional violations and, instead, they seek to

"assert their own claims, as their own constitutional rights to familial association were violated by the killing of Terrance Kellom."  (D.E. No. 42 at Pg ID 447).  "Plaintiffs argue that both the parents and minor children of Terrance Kellom had their constitutional rights to familial relations violated when Terrance was killed" and direct the Court to *Kottmyer v. Maas*, 436 F.3d 684, 689-90 (6th Cir. 2006) and *O'Donnell v. Brown*, 335 F.Supp.2d 787, 806 (W.D. Mich. 2004).

The Sixth Circuit has not squarely addressed the issue of whether a family member can assert a § 1983 or *Bivens* claim based on an alleged violation of familial relations following the death of a child who is alleged to have been killed by a state agent.

As explained below, the Court concludes that Count I should be dismissed as to all Non-Estate Plaintiffs because: 1) the Non-Estate Plaintiffs cannot assert a claim based upon an alleged violation of the Decedent's constitutional rights; they have to show a violation of their own rights; 2) although some other courts have done so, the Sixth Circuit has not recognized a § 1983 claim for loss of the right to familial association when a child is killed by a state agent; 3) moreover, this is a *Bivens* claim, which is not as broad as a claim under § 1983, and this case involves an adult, not a child, two things that further militate against finding a cognizable *Bivens* claim in Count I for these Non-Estate Plaintiffs; and 4) even if the Court were to expand *Bivens* in order to do so in this case, the Defendant officers would nevertheless be entitled to qualified immunity as to this *Bivens* claim because the alleged constitutional violation was not "clearly established" on April 27, 2015.

1.      **The Non-Estate Plaintiffs Cannot Assert A Claim Based On A Violation Of The Decedent's Rights; They Have To Show A Violation Of *Their Own* Constitutional Rights.**

It is well established that "Fourth Amendment rights are personal rights which, like some other constitutional rights may not be vicariously asserted." *Brown v. United States*, 411 U.S. 223, 230 (1973); *see also Purnell v. Akron*, 925 F.2d 941, 948 n.6 (6th Cir. 1991) (Noting that the Sixth Circuit had held that "section 1983 provides a cause of action which is *personal* to the injured party.") (emphasis in original). Thus, "[i]n the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000). "Accordingly, only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim; conversely, no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Id*.

Accordingly, the Defendant officers argue, *and Plaintiffs' Counsel agrees*, that the Non-Estate Plaintiffs cannot assert a *Bivens* claim based upon alleged violations of the Decedent's constitutional rights. The only way those Plaintiffs can proceed with a *Bivens* claim is if it is based upon a violation of *their own constitutional rights*.

2.      **Although Some Other Courts Have Done So, The Sixth Circuit Has Not Recognized A § 1983 Claim For Loss Of The Right To Familial Association When A Child Is Killed By A State Agent.**

These Non-Estate Plaintiffs claim that their constitutional rights to familial association were violated by the shooting of the decedent, and rely on *Kottmyer.*

In *Kottmyer,* the plaintiffs were the parents of a deceased infant who brought § 1983 claims against a county and its social workers, who they alleged infringed upon their

constitutional right to familial association without due process of law, in relation to the investigation and monitoring of the parents while the child was alive and hospitalized. The district court dismissed that claim and the parents appealed. On appeal, the Sixth Circuit considered whether the defendants' investigation of child abuse allegations constituted a violation of the parents' right to familial association.

As such, most of the opinion discusses the constitutional right to the maintenance of a parent-child relationship, and the fundamental right of parents to make decisions regarding the care, custody, and control of their children. In the context of the discussion, the Sixth Circuit noted that other courts "have recognized that the right to familial association is implicated by the killing of a child by a state agent." *Kottmyer,* 436 F.3d at 690. The court further noted that those "decisions rely on the notion that parents have a constitutionally protected liberty interest in the companionship and society of their children, which they are permanently deprived of when their children are killed by a state actor." *Id*.

As the Sixth Circuit has noted in subsequent decisions, however, that discussion *was dicta. See Brooks v. Knapp*, 221 F. App'x 402, 407-08 (6th Cir. 2007) (Noting that the "Sixth Circuit has briefly examined, in dicta, the right to familial association in the context of a § 1983 claim for the deprivation of the parent-child relationship" and expressing "no views about that dicta.").

Following *Kottmyer*, at least one district court in the Eastern District of Michigan has dismissed a § 1983 claim brought by a family member for interference with the right to familial relations where a decedent was allegedly killed through the use of excessive force. *Mitchell v. City of Warren*, 2012 WL 424899 (E.D. Mich. 2012). In that case, the district court explained:

> . . . *Kottmyer* does not stand directly for the proposition that the Sixth Circuit
> adopted a right of familial association "arising from the killing of a child by a
> state actor," as Plaintiff intimates. Pl.'s Resp. at 28; *Kottmyer v. Mass*, 436 F.3d
> 684, 690 (6th Cir. 2006). The *Kottmyer* court merely mentions that other circuits
> have recognized such a right in due process claims but does not adopt the same
> approach. In fact, as Defendants point out, the Sixth Circuit has specifically
> avoided creating such a right. *Purnell v. City of Akron*, 925 F.2d 941, 948 n.6
> (6th Cir. 1991). All other precedent cited by Plaintiff is from other circuits or
> related to rights distinct from those of a family member surviving a decedent
> killed by a state actor. As such, Plaintiff fails to state a legally cognizable claim
> and Defendants' motion will be granted.

*Id*. at *6.

Another judge in this district, viewing this same issue, concluded that a "constitutional claim of deprivation of the right to familial association arising from the killing of a child by a state actor *may* be cognizable in the Sixth Circuit," although it noted it would still be "unclear whether such a right would extend to the parent of an adult child," which is what was have here. *Nelson v. City of Madison Heights*, 141 F. Supp.3d 726, 741 (E.D. Mich. 2015) (emphasis added).

In a fairly recent unpublished Sixth Circuit case, the issue also arose. *LeFever v. Ferguson*, 645 F. App'x 438 (6th Cir. 2016). The majority dismissed a son's § 1983 claim that was based upon his alleged "right to familial integrity by trampling his mother's constitutional rights leading to her wrongful conviction." *Id*. at 448. The majority found that was a non-cognizable claim for a collateral injury.

In a separate concurring/dissenting opinion by Judge Helene White, she did not construe the son's claim as seeking relief for the violation of his mother's constitutional rights. Rather, she viewed him as claiming that his mother's wrongful conviction violated his own due-process right to family integrity. She then noted the Sixth Circuit's discussion of this issue in a number

of cases, including *Purnell*. Judge White then stated "I am not convinced that [the son] failed to raise a cognizable § 1983 claim." *Id.* Nevertheless, she ultimately concluded that the officers would be entitled to qualified immunity because, in light of the uncertainty of such a claim in the Sixth Circuit, the right to family integrity was not "clearly established." *Id.*

Accordingly, although some other courts have done so, the Sixth Circuit has not yet recognized a § 1983 claim for loss of the right to familial association when a child is killed by a state agent. As such, it does not appear that Count I asserts a cognizable claim on behalf of any[4] of the Non-Estate Plaintiffs.

### 3. Moreover, Count I Is A *Bivens* Claim, Which Is Less Broad Than § 1983, And This Case Involves An Adult Decedent Rather Than A Child.

Moreover, there are two things that further militate against finding a cognizable *Bivens* claim in Count I for these Non-Estate Plaintiffs.

First, the Sixth Circuit has not recognized this constitutional right to familial association even in the context of § 1983 claims, and *Bivens* has a narrower reach than § 1983. That narrow reach of *Bivens* is one of the reasons why the Tenth Circuit declined to allow such a claim to proceed. *K.B. v. Perez*, 664 F. App'x 756 (10th Cir. 2016) (noting that while the "right to familial association is a constitutionally-protected liberty interest," "neither the Supreme Court nor [the Tenth Circuit] has authorized an action under *Bivens* to redress a violation of this right," and noting "extending *Bivens* would be contrary to the strong trend of limiting its reach.").

Second, while some other courts have recognized that the right to familial association is

_____

[4]Plaintiffs have provided no support or analysis as to their claim that the decedent's *adult siblings* could assert such a claim.

implicated by the killing of a child by a state actor, this case does not involve the death of a child. Thus, as Judge Levy noted in *Nelson*, even if the Sixth Circuit were to agree with those courts, it would still be unclear whether such a right would extend to the parent of an adult. *Nelson, supra,* at *741.

      **4.**      **In Addition, Or Alternatively, The Defendant Officers Are Entitled To Qualified Immunity As To Count I Because, In Light Of The Uncertainty Of Such A Claim, The Alleged Right Was Not "Clearly Established" On The Date Of The Shooting.**

At the August 23, 2018 hearing, Counsel for Plaintiffs acknowledged that there is no Supreme Court or Sixth Circuit case that has authorized a § 1983 or *Bivens* action to redress an alleged constitutional violation of the right to familial association arising from the killing of a child by a state or federal officer. Accordingly, this Court concludes that the officers would be entitled to qualified immunity as to the claims of the Non-Estate Plaintiffs, because given the lack of case law on the issue, the alleged right was not "clearly established" on the date of the incident. As such, a reasonable officer would not have known he was violating the familial rights of Terrance Kellom's parents, adult siblings, and two children by virtue of their alleged actions taken against Terrance Kellom. *Brooks, supra; LeFever*, 645 F. App'x at 452.

    **B.**      **The Parties Now Agree That Counts II & VIII Should Be Dismissed As To Eaton And Fitzgerald.**

In Counts II and VIII of Plaintiffs' First Amended Complaint, Plaintiffs assert § 1983 claims against Defendants Eaton and Fitzgerald.

Defendants' motion asserts that Count II and VIII must be dismissed as to Eaton and Fitzgerald because they were both acting as Special Deputy US Marshals on the date in question and, therefore, a claim under § 1983 may not be asserted against them for their alleged actions on

that date.

In their response brief, Plaintiffs agree that Counts II and VIII of their First Amended

Complaint should be dismissed, stating the issue presented and their response to it as follows:

> 2.  SHOULD COUNT II AND VIII OF PLAINTIFFS' COMPLAINT BE
> DISMISSED AS AN ACTION MAY NOT BE BROUGHT PURSUANT TO 42
> USC § 1983 AGAINST LAW ENFORCEMENT OFFICERS ACTING UNDER
> COLOR OF FEDERAL LAW?
>
> Plaintiffs Respond: Yes.

(D.E. No. 43 at Pg ID 451).

Accordingly, the Court shall dismiss Counts II and VIII of Plaintiffs' First Amended

Complaint as to both Eaton and Fitzgerald.

### C.    Should Count III Be Dismissed For Failure To Identify A Racial Or Other Class-Based Invidious Or Discriminatory Animus Underlying The Alleged Conspirators' Actions?

Count III of Plaintiffs' First Amended Complaint, titled "§ 1985 Conspiracy," asserts a

conspiracy claim against Defendants Eaton and Fitzgerald under "42 USC §§ 1985(2) and (3)."

(D.E. No. 32 at Pg ID 257-58).

Subsection (2) of § 1985 pertains to a conspiracy "to deter, by force, intimidation, or

threat, any party or witness in any court of the United States from attending such court . . ."  42

U.S.C. § 1985(2).  There are no factual allegations in Plaintiffs' First Amended Complaint that

would support a conspiracy to deter a witness from testifying in a court of the United States.

To establish a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must prove: 1) a

conspiracy involving two or more persons; 2) for the purpose of depriving a person or class of

persons of the equal protection of the laws; 3) an act in furtherance of the conspiracy; 4) which

causes injury to a person or property, or a deprivation of any right or privilege of citizen of the

United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). Notably, as explained by the Sixth Circuit in *Moniz v. Cox*, 512 F. App'x 495 (6th Cir. 2013):

> The plaintiff must allege that "the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus." *Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir.1999); *see Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267–68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993); *Estate of Smithers ex rel. Norris v. City of Flint,* 602 F.3d 758, 765 (6th Cir.2010) ("To sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it.").

*Id.* at *3; *see also* Pls.' Br. at 21.

Accordingly, Defendants' motion challenges Count III on the ground that it fails to state a claim under § 1985.

In response, Plaintiffs do not dispute that Count III of their First Amended Complaint fails to state a claim under § 1985.[5]  As such, the Court shall dismiss Count III of the First Amended Complaint.

### D. Should Count IV Be Dismissed As The Alleged Conspiracy Did Not Cause Plaintiffs' Alleged Injuries?

---

[5]Rather, Plaintiffs' brief states that they "did not intend to switch their § 1983 Claim into a § 1985(3) claim, and apologize profusely . . . for the error.  Plaintiffs' ask that they be allowed to correct the error and will take the necessary actions right away."  (D.E. No. 43 at Pg ID 458).  Nevertheless, Plaintiffs have not filed a motion seeking leave to file a second amended complaint, in order to assert a conspiracy claim under § 1983.  At this stage of the litigation, and with already having filed an amended complaint, and having gone through two rounds of motions to dismiss, Plaintiffs may only amend with the opposing parties' written consent or leave of court.  A request to amend in the body of a brief does not suffice.  A formal motion to amend must be filed and Local Rule 15.1 of the Local Rules for the Eastern District of Michigan provide that a "party who moves to amend a pleading shall attach the proposed amended pleading to the motion."  Plaintiffs' Counsel is no doubt aware of this procedure, as Counsel followed it in seeking leave to file Plaintiffs' First Amended Complaint (ie., filing a motion seeking leave to amend and attaching the proposed amended complaint).

In their motion, like Defendant Quinn, the Detroit Defendants assert that Count IV must be dismissed because Plaintiffs allege that the cover-up conspiracy did not begin until after the Decedent's death. They rely on the same cases that Quinn relies upon and Plaintiffs' response to this challenge is the same as their deficient response to Defendant Quinn's motion. As such, the Court shall dismiss Count IV as to Eaton and Fitzgerald as well.

**E.    Should Count VII Be Dismissed As To Defendant Eaton, As Exigent Circumstances Existed For Her Entry Into The Subject Location?**

Like Defendant Quinn's motion, the City of Detroit's motion asserts that exigent circumstances existed such that the Court should dismiss Count VII. For the reasons set forth in above, this Court concludes that is not an issue that can be ruled upon based on the pleadings alone.

**F.    Should Claims Against Chief Craig In His Individual Capacity Be Dismissed For Want Of Material Personal Involvement And/Or Because He Is Entitled To Immunity?**

Notably, in both the caption and body of Plaintiffs' First Amended Complaint, Plaintiffs state that they have sued City of Detroit Police Chief James Craig in his official capacity only. (*See* D.E. No. 32 at Pg ID 243 & 249) (naming Chief Craig "in his official capacity" and alleging that "Defendant Craig was at all times relevant herein acting in his official capacity."). And the only count expressly asserted against Craig is Count VIII, titled "§ *MONELL* Liability."

Nevertheless, in the body of Count VIII Plaintiffs include allegations as to Craig having acted "in both his official and individual capacities." (*See* D.E. No. 32 at Pg ID 264).

In addition, the First Amended Complaint states that Count VII is asserted by Plaintiffs Kevin Kellom and Teria Kellom against "all Defendants." (*Id*. at Pg ID 262-63).

As such, Defendants' pending motion asserts that any claim made against Craig in his individual capacity should be dismissed for want of any well-pled factual allegations of personal involvement by Craig and, therefore, he is entitled to qualified immunity.

In response, Plaintiffs' Counsel does not identify any factual allegations in the complaint that indicate any personal involvement by Craig in the events at issue in this case. And at the hearing, Counsel for Plaintiffs stated that the First Amended Complaint does not seek to assert any claims against Craig in his individual capacity.

Accordingly, for all these reasons, the Court dismisses any counts that purport to be asserted against Craig in his individual capacity.

### G. Should Count VIII Against The City And Craig In His Official Capacity Be Dismissed?

Under § 1983, local governments are responsible only for their own illegal acts; they are not vicariously liable under § 1983 for their employees' actions. *D'Ambrosio v. Marino,* 747 F.3d 378, 386 (6th Cir. 2014). "Instead, a municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." *Id.*

In Count VIII, Plaintiffs assert a "§ 1983 *Monell* Liability" claim against the City of Detroit and Chief Craig in his official capacity.

It also includes this claim against Defendants Eaton and Fitzgerald, although that appears to be in error as the Count simply references them as the individual officers who allegedly violated the Decedent's rights. At the hearing, Plaintiffs' Counsel agreed that this Count should be dismissed as to Eaton and Fitzgerald.

As to the remainder of the claim, while the factual allegations are rather light as to the basis for imposing municipal liability against the City/Craig in official capacity, the Court concludes that this is an issue better suited for the summary judgment phase of the case.

## CONCLUSION & ORDER

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART.** The motions are **DENIED** to the extent that the Court:

1) concludes that the Estate exhausted administrative remedies before filing its FTCA claims against the United States;

2) declines to dismiss the *Steagald* claim asserted by the Decedent's parents in Count VII, as to Defendants Quinn and Eaton, on the ground that exigent circumstances warranted entry without a search warrant, based on the pleadings;

3) declines to dismiss the municipal liability count against the City and Chief Craig (in his official capacity) based on the pleadings.

The Court **GRANTS** the three motions to dismiss filed by Defendants to the extent that the Court:

1) **DISMISSES** Count VII against the United States because the United States has not waived sovereign immunity as to alleged violations of the Constitution;

2) **DISMISSES** Counts V & VI **WITHOUT PREJUDICE**, as to the "Non-Estate Plaintiffs" because they failed to exhaust administrative remedies prior to filing FTCA claims against the United States;

3) **DISMISSES** Count IV (the *Bivens* Conspiracy claim) because that claim is not cognizable as to the Estate, as the First Amended Complaint expressly alleges that the conspiracy began *after* the Decedent's death;

4) **DISMISSES** all "Non-Estate Plaintiffs" from all remaining counts, except Count VII, because they lack standing to assert those claims, because unlike the Estate they cannot assert a claim based on a violation the Decedent's constitutional rights;

5) **DISMISSES** Counts II & VIII as to Eaton and Fitzgerald as Plaintiffs now agree that should be done;

6) **DISMISSES** Count III for failure to identify a racial or other class-based invidious or discriminatory animus underlying the alleged conspirators actions;

7) **DISMISSES** any claims asserted against Chief Craig in his individual capacity because the First Amended Complaint includes no allegations as to his personal involvement, and because Plaintiffs' Counsel stated during oral argument that no claims are brought against Craig in his individual capacity; and

8) **DISMISSES** Count VIII (municipal liability claim) as to officers Eaton and Fitzgerald because, as Plaintiffs' Counsel agreed during oral argument, there is no basis for a municipal liability claim to be asserted against them.

**IT IS SO ORDERED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: August 29, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 29, 2018, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager