

# OFFICE OF INSPECTOR GENERAL
Department of Homeland Security

www.oig.dhs.gov

| | |
|---|---|
| DATE: | November 3, 2015 |
| MEMORANDUM FOR: | Timothy Moynihan, Director<br>Office of Professional Responsibility<br>U.S. Immigration and Customs Enforcement |
| FROM: | *Michele Kennedy*<br>Michele Kennedy<br>Deputy Assistant Inspector General for Investigations |
| SUBJECT: | Mitchell A. Quinn<br>Immigration Enforcement Agent, GS-9<br>U.S. Immigration and Customs Enforcement<br>Detroit, MI |
| CASE NUMBER: | I15-ICE-DET-09616 |

Attached is our Report of Investigation (ROI) on the above subject.

The ROI is furnished to you to evaluate and make an administrative decision regarding the above listed subject. Should you take any administrative action in response to our ROI, please inform this office so we can update our records. Please destroy the ROI upon disposition of this matter.

Should you have any questions regarding the contents of the ROI or need additional information, you may contact me at ▮▮▮▮▮▮, or a member of your staff may call Mike Wilson, Special Agent in Charge, Field Operations Division, ▮▮▮▮▮▮.

Attachment

OIG-0001

16.1

# DEPARTMENT OF HOMELAND SECURITY
# OFFICE OF INSPECTOR GENERAL

## REPORT OF INVESTIGATION

**I15-ICE-DET-09616**


THIS REPORT CONTAINS SENSITIVE LAW ENFORCEMENT MATERIAL. IT MAY NOT BE LOANED OUTSIDE YOUR AGENCY AND, EXCEPT IN CONNECTION WITH OFFICIAL AGENCY ACTION, NO PORTION OF THE REPORT MAY BE COPIED OR DISTRIBUTED WITHOUT THE KNOWLEDGE AND CONSENT OF THE INSPECTOR GENERAL



# OFFICE OF INSPECTOR GENERAL
Department of Homeland Security

Washington, DC 20528 / www.oig.dhs.gov

## REPORT OF INVESTIGATION

| | |
|---|---|
| *Case Number:* | I15-ICE-DET-09616 |
| *Case Title:* | Mitchell A. Quinn |
| | Immigration Enforcement Agent, GS-9 |
| | U.S. Immigration and Customs Enforcement |
| | Detroit, MI |
| *Report Status:* | Final |
| *Alleged Violation(s):* | Title 18 USC § 242, Deprivation of Rights Under Color of Law |

## SYNOPSIS

The U.S. Department of Homeland Security (DHS), Office of Inspector General (OIG), investigated a shooting involving Mitchell Quinn, during the performance of his duties, in Detroit, MI. The investigation was conducted jointly with the Michigan State Police (MSP), the Detroit Police Department (DPD), and the United States Marshals Service (USMS).

Quinn, along with other officers of the USMS, Detroit Fugitive Apprehension Team (DFAT), encountered Terrance Kellom, during the execution of an arrest warrant for Kellom, at his father's residence. Kellom, with a deadly weapon in his hands, charged toward Quinn, while attempting to avoid apprehension. Using appropriate deadly force, Quinn repeatedly fired his weapon in an attempt to stop Kellom; which resulted in Kellom's death.

The investigation verified both the ammunition and the weapon Quinn used were duty issued. Quinn was found to be in compliance with his use of force training and his quarterly firearms qualification.

The Wayne County Prosecutor's Office (WCPO) declined this case for prosecution, citing Quinn's actions constituted self-defense and /or the defense of others.

The United States Attorneys' Office (USAO), Eastern District of Michigan (EDMI), declined this case for prosecution, citing the evidence did not demonstrate a violation of federal law.

| *Reporting Agent* | | *Distribution:* | |
|---|---|---|---|
| Name: Dwight Stallard  Signature: | | Detroit Field Office | Original |
| Title: Special Agent  Date: 10-7-15 | | | |
| | | Headquarters | 1 cc |
| *Approving Official* | | | |
| Name: John Tiano  Signature: | | Component(s) | 1 cc |
| Title: Special Agent in Charge  Date: 10-15-15 | | | |
| | | Other | cc |

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and is disseminated only on a need to know basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-08

**OIG-0003**

16.3

# REPORT OF INVESTIGATION

## DETAILS

On April 27, 2015, the DHS OIG received information that Mitchell A. Quinn, Immigration Enforcement Agent, GS-9, U.S. Immigration and Customs Enforcement (ICE), Detroit, MI, was involved in an on-duty shooting, while performing his duties as a member of the USMS DFAT. The shooting reportedly occurred at 9543 Evergreen Rd., Detroit, MI. (Exhibit 1)

**Allegation: While Mitchell Quinn was executing a felony arrest warrant pertaining to Terrance Kellom, Quinn shot and killed Kellom, potentially violating Kellom's civil rights.**

On April 27, 2015, the DHS OIG interviewed Richard Sanchez, Detective Sergeant, MSP, who was assigned to investigate the on-duty shooting involving Quinn. Sanchez said Quinn, who was assigned to the USMS DFAT, attempted to locate and arrest Kellom regarding two outstanding felony warrants. Kellom, who was positively identified as he entered 9543 Evergreen Rd., Detroit, MI, was eventually found hiding in the attic. Kellom escaped the attic by using a claw hammer to put a hole in the attic floor, dropping down into the bedroom below. Kellom charged toward Quinn with the claw hammer in his hand. To stop Kellom, Quinn fired his weapon and shot Kellom. [Agent's note: Kellom was transported to the hospital where he was pronounced dead on arrival.] (Exhibit 2)

On April 27, 2015, the DHS OIG, MSP, and DPD executed a search warrant at 9543 Evergreen Rd., Detroit, MI. The DHS OIG viewed the entire crime scene, verifying witness statements that Kellom created a hole in the attic and lowered himself to a bedroom at ground level. A hammer, with blood on the handle, was also recovered on the floor down the hall from the same bedroom, matching witness statements about how the hole in the attic was created and the subsequent assault on Quinn. Quinn was transported to the hospital for an injury suffered during the altercation. The DHS OIG facilitated the recovery and transfer of Quinn's firearm to MSP forensics. The DHS OIG went to a separate hospital, where Kellom had been transported, to assist in gathering evidence from Kellom. (Exhibit 3)

On April 28, 2015, the DHS OIG and the MSP attended the autopsy of Kellom, conducted by the Wayne County Medical Examiner's Office. Four gunshot wounds located on Kellom's body were determined to be the cause of death. (Exhibit 4)

On April 28, 2015 and April 29, 2015, Gregory Yon, Livonia Police Department; Darell Fitzgerald, DPD; Treva Eaton, DPD; Brian Behrend, Oakland County Sheriff's Department; David Weinman, Wayne County Sheriff's Department; and Chad Smith, USMS, the law enforcement officers involved in the search for Kellom, provided written statements to the USMS. The DHS OIG reviewed the statements which summarized the incident as follows: Members of DFAT attempted to locate and arrest Kellom, regarding two outstanding felony warrants for armed robbery and carrying a concealed weapon. Members of DFAT identified Kellom as he entered a residence belonging to his father, Kevin Kellom, at 9543 Evergreen Rd. Detroit, MI. Members of DFAT were given consent to enter the residence by Kellom's father, who lied when he claimed Kellom was not present in the home.

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and will be disseminated only on a "Need to Know" basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

## REPORT OF INVESTIGATION

Kellom was found hiding in the attic, and a standoff ensued between the officers and Kellom, who was holding a claw hammer. Kellom repeatedly told the officers they would have to shoot him before he surrendered.

In an effort to escape, Kellom hammered a hole through the floor of the attic, which was also the ceiling of a first floor bedroom. Kellom jumped down through the hole in the bedroom ceiling and advanced toward Quinn with a claw hammer that Kellom wielded above his head. Quinn fired his duty issued weapon and shot Kellom multiple times. Kellom was transported to Sinai Grace Hospital, Detroit, MI, where he eventually died from his wounds.

Fitzgerald's statement indicated he was positioned behind Quinn when Kellom moved toward Quinn with the claw hammer raised above his head. Fitzgerald believed Kellom was going to use the hammer to strike him or Quinn, as Fitzgerald drew his service firearm in defense. Quinn drew his service firearm and fired it before Fitzgerald could take further action. Fitzgerald's response to Kellom's actions, as well as his statement, supported the reasonableness of Quinn's actions. (Exhibit 5)

On May 1, 2015, Quinn turned over a typewritten statement detailing the events of his encounter with Kellom on April 27, 2015. In the presence of his attorney, Larry Berger, General Counsel, Federal Law Enforcement Officers Association, Quinn declined to provide further statements, but swore to the validity of his prepared statement.

Quinn's statement indicated, while assisting in the arrest for Kellom, Quinn approached a bedroom with a large blanket attached to the doorframe of the room, obstructing his view of the interior of the room. When he heard what sounded like a person landing on the floor of the room, Quinn backed away from the doorway. Kellom pulled aside the blanket over the doorway and lunged toward Quinn. Quinn observed Kellom with a claw hammer, extended over his head, in his right hand. Quinn ordered Kellom to stop but Kellom continued to advance toward Quinn. While stepping back to gain distance from Kellom, Quinn drew his firearm because he believed Kellom was going to strike him with the hammer. Quinn ordered Kellom to stop again but Kellom continued to advance toward Quinn. In fear for his life, Quinn fired one shot at Kellom who continued to move toward him. Perceiving Kellom as a continuing threat, Quinn then fired additional shots at Kellom who ultimately collapsed, with the hammer in his hand. (Exhibit 6)

The MSP forensic lab findings affirmed Kellom's clothing contained drywall and insulation debris, consistent with material found in the attic. Photographs taken of the scene documented the hole from the attic along with fresh debris captured on the floor in the room below. A deoxyribonucleic acid (DNA) profile taken from Kellom's body matched the DNA found on the hammer recovered from the scene. Quinn fired seven rounds, four of which struck Kellom. The remaining three rounds were located in the wood trim and wood floor at the crime scene. (Exhibit 7)

**IMPORTANT NOTICE**

This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and will be disseminated only on a "Need to Know" basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-08

## REPORT OF INVESTIGATION

On August 19, 2015, the WCPO concluded Quinn's actions constituted self-defense and /or the defense of others, thereby declining prosecution of Quinn. The WCPO found the various statements of family members to be inconsistent, unreliable, and illogical. (Exhibit 8)

The DHS OIG reviewed the Memorandum of Understanding (MOU) between ICE and the USMS, relevant to Quinn's special deputation with the USMS. The MOU requires all participants comply with their respective agency's guidelines concerning the use of firearms and deadly force. No evidence existed to indicate Quinn violated the MOU. (Exhibit 9)

The DHS OIG reviewed Quinn's training history in the Firearms, Armor, and Credentials Tracking System (FACTS), as provided by the ICE, Office of Professional Responsibility. The FACTS information confirmed, on March 13, 2015, Quinn successfully passed his use of force training along with the required ICE quarterly firearms qualification course. Quinn was in compliance with his use of force and firearms training at the time of the incident. FACTS also confirmed the firearm and ammunition surrendered at the scene were the same issued to Quinn. (Exhibit 10)

On October 1, 2015, USAO EDMI issued a letter to DHS OIG stating prosecution would be declined for Quinn. The USAO EDMI concurred with the DHS OIG's determination that the evidence did not demonstrate a violation of federal law. (Exhibit 11)

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and will be disseminated only on a "Need to Know" basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-08

## REPORT OF INVESTIGATION

## EXHIBITS

| NUMBER | DESCRIPTION |
| --- | --- |
| 1 | Memorandum of Activity dated April 27, 2015, Case opening – Mitchell Quinn, ERO |
| 2 | Memorandum of Activity dated April 27, 2015, Personal Interview – Richard Sanchez, MSP |
| 3 | Memorandum of Activity dated April 27, 2015, Search Warrant - 9543 Evergreen Rd. Detroit, MI |
| 4 | Memorandum of Activity dated April 28, 2015, Autopsy of Terrence Kellom |
| 5 | Memorandum of Activity dated May 7, 2015, Collection of US Marshals Service Reports of Investigation |
| 6 | Memorandum of Activity dated May 1, 2015, Personal Interview – Mitchell Quinn, ERO |
| 7 | Memorandum of Activity dated August 21, 2015, Receipt of MSP Lab Report, Photos, and Scene Sketch |
| 8 | Memorandum of Activity dated August 19, 2015, Wayne County Prosecutor's Declination of Charges |
| 9 | Memorandum of Activity dated August 24, 2015, Receipt of ICE MOU with USMS from ICE OPR |
| 10 | Memorandum of Activity dated April 28, 2015, Receipt of FACTS Report from ICE OPR |
| 11 | Memorandum of Activity dated October 1, 2015, The United States Attorney's Office Declination of Charges |

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and will be disseminated only on a "Need to Know" basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-08

OIG-0007

16.7