UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Nelda Kellom, *et al.*,

      Plaintiffs,

                                       Case No. 17-11084

v.                                    Case No. 19-11622

Mitchell Quinn, *et al.*,            Sean F. Cox
                                       United States District Court Judge

      Defendants.
_____/

**OPINION & ORDER
ON RENEWED SUMMARY JUDGMENT MOTIONS,
FILED FOLLOWING REMAND**

      A young man named Terrance Kellom was shot and killed in 2015, when a United States

Marshal Detroit Fugitive Apprehension Team was attempting to arrest him in Detroit, Michigan.

Thereafter, an attorney filed two federal cases on behalf of his estate and relatives.  The first case

was filed in 2017 and the second was filed in 2019.

      In the 2017 case, an excessive-force claim against Defendant Agent Mitchell Quinn was

the only claim that proceeded to a jury trial in October of 2019, and the jury decided the shooting

was justified.  All other claims, including claims brought under the Federal Tort Claims Act

(FTCA), were dismissed in connection with pretrial motions.

      The 2019 case was short-lived, with this Court dismissing the untimely FTCA claims

asserted by Terrance's relatives approximately six months after the case was filed.

      Plaintiffs filed a notice of appeal in each case.  The United States Court of Appeals for

the Sixth Circuit ordered the two appellate cases consolidated for purposes of briefing and

submission.  It issued an unpublished decision on September 3, 2021 – that it filed in both cases.

1

But that opinion discusses this 2017 case exclusively.  It affirmed the majority of this Court's rulings, but issued a limited remand as to two things.  Following remand, the Government filed a renewed summary judgment motion in each of these cases.

For ease of reference, this Court addresses both motions in this same Opinion and Order, that it issues in both cases.

For the reason set forth below, this Court grants the Government's Renewed Motion for Summary Judgment filed in the 2017 Case, to the extent that this Court re-affirms the dismissal of the prematurely-filed FTCA claims in this case under the circumstances presented here.

In light of the fact that the Sixth Circuit's opinion does not address the 2019 case at all, does not specify any rulings in that case that were vacated, or any claims or issues that were remanded, it does not appear that anything was remanded in the 2019 case.  Nevertheless, this Court agrees with the Government that the claims in *Kellom II* should be dismissed notwithstanding *Copen*.  Accordingly, to the extent that anything was remanded in the 2019 case, this Court reaffirms its dismissal of Plaintiffs' claims.

## BACKGROUND

Terrance Kellom had outstanding arrest warrants for armed robbery and unlawful possession of a firearm. He was shot and killed on April 27, 2015, when a United States Marshal Detroit Fugitive Apprehension Team was attempting to arrest him at this father's home in Detroit, Michigan.  Following the shooting, attorney Nabih Ayad filed two different federal lawsuits on behalf of the family members and Estate of Terrance Kellom that were based upon that shooting.

### *Kellom I* (Case No. 17-11084)

2

On April 6, 2017, Plaintiff Nelda Kellom, as Personal Representative of the Estate of Terrance Kellom, Deceased ("the Estate"), filed the first federal case, Case Number 17-11084 (hereinafter "*Kellom I*").

The Estate's original complaint named the following Defendants: 1) Immigration and Customs Enforcement Agent Mitchell Quinn; 2) Detroit Police Officer Darell Fitzgerald; and 3) Detroit Police Officer Treva Eaton.  It included the following four counts: 1) "*Bivens* Claim" (Count I); 2) "42 U.S.C. § 1983 – Excessive Force and/or Unlawful Use of Deadly Force" (Count II); 3) "§ 1983 Conspiracy by Defendants" (Count III); and 4) "Wrongful Death [under] Michigan Wrongful Death Act, Mich. Comp. Laws § 600.2922 *et seq*," (Count IV).  The Estate's complaint acknowledged Defendant Quinn's federal employment and his participation in a federal task force during the incident.

It is undisputed that the Estate did not submit an administrative claim to the Department of Homeland Security before filing Case Number 17-11084.  But several weeks after filing suit, on April 25, 2017, the Estate submitted an administrative tort claim seeking fifty million dollars. (ECF No. 35-3; *see also* ECF No. 246 at 13, ¶ 72).

The Department of Homeland Security denied the Estate's administrative claim in a letter mailed on February 1, 2018. (ECF No. 7-6; *see also* ECF No. 246 at 13, ¶ 75).  That letter expressly advised that, if the Estate disagreed with the denial, it could file suit in federal court "not later than sixth months after the date of mailing of this notification of denial. 28 U.S.C. § 2401(b)." (*Id.*).

In a detailed e-mail sent to the Estate's counsel on February 7, 2018, counsel for the Government explained that the Estate's lawsuit asserting a FTCA claim was prematurely filed

3

before administrative exhaustion and that the Estate's FTCA claim could only be saved by *filing a timely new lawsuit* on behalf of the Estate.  (ECF No. 7-7 & 243-41).  That email included the legal authority supporting the Government's statements.  After receiving that email, however, the Estate's counsel did not file a new lawsuit in order to assert the Estate's then-exhausted FTCA claims.

On May 4, 2018, Plaintiff's counsel filed a First Amended Complaint, adding both named parties and claims. In addition to the Estate, seven of the Decedent's family members asserted claims in Plaintiffs' First Amended Complaint in their individual capacity (Nelda Kellom, Kevin Kellom, Teria Kellom, Lawanda Kellom, Terrell Kellom, and Janay Williams, on behalf of Terrance Kellom's two minor children).  The Court will refer to these parties, collectively, as the "Non-Estate Plaintiffs."  The First Amended Complaint included the following eight counts: 1) a *Bivens* excessive force claim (Count I); 2) a § 1983 excessive force claim (Count II); 3) a § 1985 conspiracy claim (Count III); 4) a *Bivens* conspiracy claim (Count IV); 5) a wrongful death claim under Michigan law (Count V); 6) a claim for intentional infliction of emotional distress under Michigan law (Count VI); 7) a *Steagald* claim (Count VII); and 8) a § 1983 *Monell* liability claim (Count VIII).

Less than two weeks later, on May 16, 2018, the United States filed a Motion to Dismiss. One of the issues presented in that motion was "Whether plaintiffs exhausted the FTCA's mandatory administrative remedies for tort claims against the United States (Claims V & VI) before filing this suit, when the estate did not submit an administrative claim until a month after filing this suit and the remaining plaintiffs have never initiated the administrative process." (ECF No. 35 at 4).

4

In an Opinion and Order issued on August 29, 2018, this Court made a number of rulings. This Court dismissed the FTCA count without prejudice as to the Non-Estate Plaintiffs because they failed to exhaust administrative remedies prior to filing FTCA claims in the case. As to the Estate, however, this Court was not persuaded that its FTCA claim should be dismissed for failure to exhaust and rejected the Government's challenge to the Estate's FTCA claim.

On October 3, 2018 – nearly five months after the Government filed its motion noting the Non-Estate Plaintiffs' failure to exhaust – administrative tort claims were submitted to the Department of Homeland Security on behalf of the Non-Estate Plaintiffs. The Agency ultimately denied the claims of the Non-Estate Plaintiffs on February 1, 2019. The Non-Estate Plaintiffs did not seek leave to file another amended complaint, in order to re-assert their FTCA claims that had been dismissed in *Kellom II.* Rather, they filed a separate lawsuit (*Kellom II*) but filed it too late.

The case proceeded with the claims and Defendants that remained. Following the close of discovery, Defendants filed summary judgment motions as to the remaining claims. The Government again challenged the Estate's FTCA claims as having been prematurely filed before the Estate filed an administrative claim.

In an Opinion and Order issued on May 21, 2019, this Court denied Defendant Mitchell Quinn's request for summary judgment as to the Estate's excessive force claim. As to all remaining claims in this case, this Court granted summary judgment in favor of Defendants. As to the Government's renewed challenge to the Estate's FTCA claim, this Court concluded that it lacked subject matter jurisdiction over those claims because the Estate failed to exhaust its administrative claim before filing this lawsuit.

On June 26, 2019, this Court issued an order on Defendant Quinn's Motion for Protective Order, wherein it imposed monetary sanctions on Plaintiff's counsel for having disseminated materials to the media in violation of a stipulated protective order.  (ECF No. 127).

The remaining claim against Defendant Quinn proceeded to a jury trial.  On November 4, 2019, the jury returned a verdict on Plaintiff's excessive force claim against Defendant Quinn, finding no cause of action.  A Judgment was issued in *Kellom I* on November 5, 2019.  Plaintiffs filed a Notice of Appeal on December 29, 2019.

### *Kellom II* (Case No. 19-11622)

On June 2, 2019, while *Kellom I* was still pending, a second federal lawsuit was filed by Mr. Ayad ("Kellom II").  This second case was asserted against the United States as the sole Defendant.

The suit was originally filed on behalf of: 1) Nelda Kellom, individually and as Personal Representative of Terrance Kellom; 2) Kevin Kellom; 3) Teria Kellom; 4) Lawanda Kellom; 5) Terrell Kellom; and 6) Janay Williams, as Personal Representative of Terrance Kellom's two minor children.  It included the following two counts, that were asserted by all named Plaintiffs: 1) "Wrongful Death" under Mich. Comp. Laws § 600.2922 *et seq*. (Count I); and 2) "Intentional Infliction of Emotional Distress" (Count II).

But Plaintiffs later filed an amended complaint that: 1) removed the Estate as a party, leaving only the Non-Estate Plaintiffs; and 2) asserted the Intentional Infliction of Emotional Distress claim only on behalf of Kevin Kellom and Teria Kellom (the two family members who were present in the house on the date of the shooting).

On September 4, 2019, the United States filed a Motion to Dismiss.  In an Opinion and

Order issued on January 8, 2020, this Court treated that motion as a summary judgment motion, after giving both sides the opportunity to present additional materials. The Court granted summary judgment in favor of the Government as to both claims, after ruling that: 1) Plaintiffs failed to timely exhaust their administrative FTCA remedies; 2) Plaintiffs had not established that they were entitled to either statutory or equitable tolling; and 3) Plaintiffs could not assert wrongful death claims because, under Michigan's Wrongful Death Act, the Estate is the only proper plaintiff for such a claim.

Plaintiffs filed a Notice of Appeal in *Kellom II* on March 7, 2020.

**The Sixth Circuit's Decision**

Plaintiffs filed Notices of Appeal in both cases and the Sixth Circuit granted a motion to consolidate and ordered the two cases consolidated for purposes of briefing and submission.

On September 3, 2021, the Sixth Circuit issued an unpublished opinion that was filed in both cases. *Kellom v. Quinn*, 2021 WL 4026789 (6th Cir. 2021). The front of the decision identifies Sixth Circuit case numbers 20-1003 and 20-1222. The Sixth Circuit's docket reflects that its Case Number 20-1003 involves this Court's Case Number 17-11084 ("*Kellom I*") and its Case Number 20-1222 involves this Court's Case Number 19-12622. ("*Kellom II*").

"A district court is limited by the scope of the remand under which it operates." *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997). The purpose of the appellate court's "opinion and order is to inform and instruct the district court and the parties and to outline the procedure the district court is to follow. The chain of intended events should be articulated with particularity." *United States v. Campbell*, 168 F.3d 263, 268 (6th Cir. 1999).

Unfortunately, the appellate court's decision left the parties unsure of what has been

7

remanded.

Plaintiffs contend that the Sixth Circuit's remand was a "general remand." (Pls.' Br., ECF No. 245, at 19). Plaintiffs further assert that the remand is not confined to their FTCA claims and contend that their "excessive force claim," the one that proceeded to a jury trial, is also "now pending" in this case. (*Id*.). Plaintiffs assert that "there can be no doubt that the prior jury verdict in this case has been overturned on remand, and that, based on the strong evidence of excessive force in this case, should it be necessary, Plaintiffs are entitled to go forward to trial on their excessive force claim . . ." (*Id*. at 24).

Contrary to Plaintiffs' assertion, the Sixth Circuit's remand was not a general remand. And the Sixth Circuit did not remand for a new trial on the excessive-force claim against Defendant Quinn.

"An appellate court's remand can either be general or limited in scope, and that distinction governs the district court's authority on remand." *Monroe v. FTS USA, LLC*, 17 F.4th 664, 669 (6th Cir. 2021). "An appellate court's general remand lacks explicit limitation; therefore, it does not limit the district court's review and allows for de novo review of the matter." *Id.* "By contrast, a limited remand 'constrains' the district court's authority to the issue or issues specifically articulated in the appellate court's order." *Id.*

As this Court reads the Sixth Circuit's unpublished decision, the remand is a limited remand. In addition, because the decision only addresses *Kellom I,* this Court concludes that limited remand is confined to *Kellom I.*

Significantly, the Sixth Circuit's opinion makes *no reference whatsoever* to the procedural history of *Kellom II,* the claims that were asserted in *Kellom II,* this Court's January

8

8, 2020 Opinion and Order that dismissed the claims in that second case, or this Court's reasons for doing so.  And it did not reverse or vacate any rulings in that case.  In fact, the opening paragraph of the decision reads as if there was only *one case – Kellom II*:

> *This case*[1] involves the fatal shooting of Terrance Kellom during an attempted arrest.  A jury decided that the shooting was justified.  But Kellom's estate and family now challenge various pre-trial rulings by the district court, plus evidentiary rulings at trial.  We affirm in part, reverse in part, and remand some issues to the district court.

*Quinn v. Kellom, supra,* at *1 (emphasis added).

The remainder of the Sixth Circuit's unpublished decision discusses and addresses *Kellom I exclusively*.  The opinion discusses the complaint in *Kellom I* (ie, the complaint that "raised four counts: (1) a *Bivens* claim against Quinn, Eaton, and Fitzgerald for excessive force in violation of the Fourth Amendment;1 (2) a federal civil rights claim against Eaton and Fitzgerald for excessive force in violation of the Fourteenth Amendment; (3) a federal civil rights conspiracy claim against Quinn, Eaton, and Fitzgerald alleging a cover-up of the events leading to Kellom's death; and (4) a state-law tort claim for wrongful death against Quinn, Eaton, and Fitzgerald.").  *Kellom v. Quinn, supra,* at *1.  That was the complaint in *Kellom I* – not *Kellom II.*  The opinion then discusses the subsequent events that occurred in *Kellom I* (not *Kellom II*):

> About three weeks after filing the complaint, the Estate filed an administrative claim for damages with the federal agency in charge of the task force. The agency denied the claim.

---

[1]That language is in contrast to language typically used in consolidated appeals. *See, eg.*, *Brown Jug, Inc. v. Cincinnati Ins. Co.*, __ F.4th __, 2022 WL 538221 at *1 (6th Cir. 2022) ("Plaintiffs in these consolidated appeals are businesses that . . ."); *United States v. Rich*, 2021 WL 4144059 at *2 (6th Cir. 2021) ("These consolidated appeals are another prime example of . . ."); *Smyers v. Ohio Mulch Supply, Inc*., 2021 WL 27746645 at *1 (6th Cir. 2021) ("In this consolidated appeal, plaintiffs . . .  appeal the district court's . . .").

> After the administrative claim was denied, the Estate amended its complaint. The amended complaint added Kellom's father and other family members as plaintiffs and raised some new claims. Among other changes, the amended complaint added a state-law claim for intentional infliction of emotional distress against Eaton, Fitzgerald, and the United States, a state-law wrongful death claim against the United States, and a Fourth Amendment claim for unlawful search. The plaintiffs also raised a municipal liability claim against the City of Detroit and various Detroit officers.
>
> The district court dismissed every claim before trial except the excessive force claim against Quinn. A jury found that Quinn's actions were justified. Now on appeal, the plaintiffs challenge the district court's dismissal of some claims. They also challenge various evidentiary rulings at trial. We address each issue in turn.

*Id.* at *2.

The decision then addresses each of the various legal challenges that were raised in relation to *Kellom I* (the FTCA exhaustion issue in *Kellom I*, the municipal liability claim in *Kellom I*, the Fourth Amendment claim in *Kellom I*, evidentiary rulings during the course of the jury trial that was held in *Kellom I*, and the sanctions order that this Court issued in *Kellom I*). The opinion ends by stating: "[h]aving considered the plaintiffs' many objections to the district court's ruling, we remand the FTCA claims, affirm in part, and vacate the sanctions order." *Id.* at *6.

The Sixth Circuit's decision lacks any discussion of *Kellom II*. This Court fails to see that the Sixth Circuit vacated any ruling in *Kellom I* or remanded any issues in *Kellom I* back to this Court.

In addition, as the undersigned reads the decision, the remand as to *Kellom I* is a limited remand – as shown by the language in the opening paragraph of the opinion – "We affirm in part, reverse in part, and *remand some issues* to the district court." *Quinn v. Kellom, supra*, at *1 (emphasis added).

10

The Sixth Circuit affirmed with respect to most of the issues it addressed: 1) it affirmed this Court's summary judgment ruling on Plaintiffs' municipal liability claim (*Id*. at *4); 2) it affirmed this Court's grant of summary judgment as to Plaintiffs' Fourth Amendment claim (*Id*. at *4); and 3) it affirmed as to all of this Court's evidentiary rulings, made during the course of the jury trial in *Kellom I*.  (*Id*. at *4-5).

But the opinion reversed this Court's ruling on the sanctions order imposed upon Plaintiffs' counsel, vacated that order, and "remand[ed] for fact-finding on the nature of the materials the plaintiff's attorney disclosed and such further proceedings as are appropriate."  *Id.* at *6.  At the Status Conference following remand, however, the Government advised that it does not wish to proceed any further as to the vacated sanctions order.  Thus, that issue is now closed.

In addition, as will be discussed in more detail below, the decision also ordered a limited remand in this case with respect to Plaintiffs' FTCA claims in *Kellom I*.  After concluding that the FTCA's exhaustion requirement is now a claims-processing rule (rather than jurisdictional), it remanded for this Court to consider: 1) whether the Government waived or forfeited the exhaustion issue by the manner and timing in which it was raised and, if so, whether to excuse any delay on the part of the Government; and 2) whether the amended complaint that Plaintiffs filed post-exhaustion "cures" any defect.

**Motions Filed Following Remand**

After the mandates issued, this Court held a Status Conference on November 23, 2021, in both *Kellom I* and *Kellom II*.  It was during these conferences that the Government advised that it does not wish to further pursue the sanctions order that was vacated by the Sixth Circuit.  The

parties agreed that the Government could address any remaining issues that were remanded by filing a renewed motion for summary judgment.

Thereafter, the Government filed a Renewed Motion for Summary Judgment in both cases. The parties have fully briefed the issues and the Court heard oral argument on May 26, 2022.

## STANDARD OF DECISION

The Government brought its Renewed Motions for Summary Judgment under Fed. R. Civ. P. 56.[2]  Summary judgment will be granted where there exists no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

### I.   The Government's Renewed Summary Judgment Motion in *Kellom I*

Before a plaintiff "can sue a federal employee, the FTCA requires them to exhaust administrative remedies."  *Kellom v. Quinn, supra*, at *2 (citing *McNeil v. United States*, 508 U.S. 106, 112, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993)).  Because the "plaintiffs here allege[d] that Quinn, Eaton, and Fitzgerald committed torts in the scope of their federal employment," under the FTCA, they "had to exhaust their administrative claims before filing a lawsuit.*"

---

[2]Plaintiffs' briefs in response to the Government's renewed summary judgment motions included standard-of-review sections that proceed as if the motions were either motions to dismiss brought under Fed. R. Civ. P. 12(b)(1) (an attack on subject-matter jurisdiction) (ECF No. 245 in *Kellom I*, at 2) or motions to dismiss under Fed. R. Civ. P. 12(b)(6).  (ECF No. 22 in *Kellom II,* at 8).  Both motions, however, were expressly brought under Fed. R. Civ. P. 56.

*Kellom v. Quinn, supra*, at *3. "But the plaintiffs" in *Kellom I* "filed suit first. So [this court] dismissed the plaintiffs' FTCA claims for lack of jurisdiction." *Id.* On appeal in this case, the Sixth Circuit stated that ruling "made sense" because "[u]nder long-standing Sixth Circuit precedent," it has "previously held that the FTCA's exhaustion requirement is jurisdictional." *Id.* (citation omitted).

The Sixth Circuit noted, however, that while the appeal in this case was pending, a decision was issued in *Copen v. United States*, 3 F.4th 875 (6th Cir. 2021). Although one panel does not have the authority to overrule a published decision of another panel, and although *Copen* "dealt with a different aspect of the FTCA's exhaustion requirement," the panel that heard the appeal in this case concluded that the Sixth Circuit "changed course" in *Copen*. It concluded that, "consistent with *Copen*, failure to satisfy [the exhaustion requirement] does not deprive a court of jurisdiction." *Id.* at * 3. Rather, the FTCA's exhaustion requirement is now deemed a *claims-processing rule.*

It then stated as follows, and ultimately issued a limited remand in this case, so that this Court could consider: 1) whether the Government waived or forfeited the exhaustion issue by raising it in its summary judgment motion and, if so, whether to excuse any delay by the Government; and 2) whether the amended complaint that Plaintiffs' filed post-exhaustion cures any defect:

> Because the exhaustion requirement is not jurisdictional, the procedural history in this case matters. When the United States moved for summary judgment based on lack of jurisdiction, the plaintiffs responded that *the government's motion was untimely.* Of course, that wouldn't matter if the failure to institute a new action had deprived the court of jurisdiction. Jurisdictional rules limit a court's power to hear a case, and they *cannot be forfeited or waived*. So a party can seek dismissal for jurisdictional defects at any point in the litigation. *But claim-processing rules like this one are not jurisdictional and don't always mandate dismissal. See*

13

*Henderson v. Shinseki*, 562 U.S. 428, 435, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011). Moreover, the government's motion was filed after the Estate had exhausted its administrative remedies and had filed an unopposed amended complaint. Thus, *if the government's motion was truly too late*, that could have consequences. *We will leave it for the district court to decide in the first instance whether to excuse any delay and whether the amended complaint filed post-exhaustion cures any defect.*

*Id*. at *3. (Emphasis added).

### A.     The Government Did Not Forfeit Or Waive Its Failure-To-Exhaust Defense To The FTCA Claims.  Thus, There Is No Delay To Excuse.

Whether the FTCA's exhaustion requirement is jurisdictional, or is a claims-processing rule, is important.  That is because a district court "must raise jurisdictional defects on [its] own initiative and may not overlook them even if the parties forfeit or waive challenges to them." *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020).  Moreover, a party can seek dismissal of a claim based on a lack of subject-matter jurisdiction at any point in the litigation.  "By contrast, mandatory claims-processing rules bind the courts only when properly asserted and not forfeited."  *Id.*

When properly invoked, mandatory claims–processing rules must typically be enforced by a district court.  *Alam*, 960 at 834.  Here, the Sixth Circuit remanded so that this Court could consider whether the Government forfeited or waived the exhaustion issue because the issue was presented in the Government's summary judgment motion**,** that was filed after Plaintiffs had filed an "unopposed amended complaint."  *Kellom v. Quinn, supra*, at *3.

The Sixth Circuit, however, does not appear to have appreciated the nuanced procedural background when it referenced Plaintiffs' amended complaint as having been "unopposed" by the Government.  This Court's February 6, 2018 Scheduling Order (ECF No. 21) provided that amendments to pleadings could be made by April 16, 2018.  After Plaintiff's filed their motion

seeking leave to file an amended complaint by that date, the Government submitted a response

brief stating the it "interpret[s] the Court's prior order (Dkt. #21) as having granted plaintiff

leave to amend by April 16, 2018 under" Fed. R. Civ. P. 15 but nevertheless clarifying that it

wished to reserve its defenses to Plaintiffs' claims and would challenge them through a motion to

dismiss.  (ECF No. 30).  And the Government then did so.

      The Government persuasively asserts that the record establishes that it did not forfeit or

waive its exhaustion defense because it raised its exhaustion defense at every stage of the case:

> Here, the government did not waive or forfeit its defense. Agent Quinn
> moved to dismiss the Estate's wrongful death claim because he was not the proper
> defendant for such a claim under the FTCA. (*See* Order, ECF Nos. 22–24). Once
> the United States was substituted for Agent Quinn and the Estate moved to amend
> its complaint, the United States explicitly preserved its defenses, (Order, ECF No.
> 31, PageID.241), then moved to dismiss because the Estate failed to properly
> exhaust before instituting suit. (US MTD, ECF No. 35). After the court denied the
> United States' motion, (*see* Order, ECF No. 52, PageID.560), the United States
> pleaded the Estate's failure to exhaust as an affirmative defense in its answer, (*see*
> US Answer, ECF No. 62, PageID.717) (Seventh Affirmative Defense). Once the
> parties completed discovery, the United States again raised the argument in its
> motion for summary judgment, (US MSJ, ECF No. 80), and the Court granted
> that motion, (Order, ECF No. 112). There is no point during this litigation when
> the United States was not actively asserting or preserving its failure to exhaust
> defense.

(Govt.'s Br. at 18).

      In response to the pending motion, Plaintiffs assert that the "time to raise a failure to

exhaust argument is in the motion to dismiss phase of litigation, and not the summary judgment

phase."  (*Id.*).  But the Government *did raise* failure to exhaust in a motion to dismiss.  That the

Government did not ultimately prevail on that challenge until its summary judgment motion

presented the issue to this Court a second time does not support either waiver or forfeiture by the

Government.

This Court finds that, under the facts presented here, the Government did not waive or forfeit the exhaustion defense because it raised that defense at every available opportunity in this case. *See Alam*, 960 F.3d at 834 (Finding that the "exceptions to mandatory claim-processing rules [of] waiver or forfeiture" did not apply where the "government timely objected to [the petitioner's] failure to exhaust at every available opportunity."). Thus, there was no delay on the part of the Government to excuse.

### B. Does Plaintiffs' Amended Complaint, Filed Post-Exhaustion, Cure Their Failure To Exhaust Prior To Filing This Lawsuit?

Part of the Sixth Circuit's limited remand was for this Court to decide whether "the amended complaint filed post-exhaustion cures any defect" as to *Kellom I* having been prematurely filed. *Quinn v. Kellom, supra.*

As to this issue, Plaintiffs take a strange position and argue that *they did exhaust* their administrative claims before asserting a FTCA claim in this case. Their brief states that the Government "claims in its brief that Plaintiffs initial filing, which did not include (nor intentionally omit) an FTCA [claim] or the United States as a defendant, constituted an FTCA claim before initiating an administrative claim. **Defendant relies solely on cases in which an FTCA claim was brought before the administrative claim was filed**., which make them completely distinguishable from, and inapplicable to, the present case." (*See* Pls.' Br, ECF No. 245, at 10) (bolding and underlining in original). Thus, Plaintiffs' position is that their FTCA claim was not brought in this action until after they had exhausted their administrative claims because they did not label their FTCA claim as such in their original complaint:

> In all of the above cases [relied on by the Government], the FTCA claim was initiated before the administrative complaint was filed. In the present matter, the suit was filed on April 6, 2017, however, that suit did not include (or

intentionally exclude) an FTCA claim, nor did it include the United States as a defendant.  Plaintiffs' administrative complaint was made on April 25, 2017, yet Plaintiffs' FTCA claim was not brought until May 5, 2018, the date on Plaintiffs' Amended Complaint.  **Therefore, Plaintiffs' FTCA claim was brought well after the denial, and exhaustion, of their administrative claim**.

(Pls.' Br., ECF No. 245, at 10-11) (bolding and underlining in original).  Plaintiffs' make this same argument throughout their brief.  (*See, eg.,* Pls.' Br. at 13) (Wherein Plaintiffs argue that another case relied on by the Government is "**completely distinguishable from our own** in that the initial complaint included the FTCA claim before the plaintiff filed an administrative complaint.") (bolding and underling in original).

In its decision, however, the Sixth Circuit noted that a plaintiff "must always exhaust" prior to filing suit "if they allege in their complaint that a defendant is a federal employee acting within the scope of [his or] her employment." *Kellom v. Quinn, supra,* at *2-3.  Here, Plaintiffs' original complaint, filed on April 6, 2017, did precisely that.  (*See e.g.*, Pls.' Compl., ECF No. 1, at ¶ 11, alleging that "at all relevant times," Defendant Quinn was a "federal law enforcement officer employed by Immigration and Customs Enforcement, a federal agency," and was acting "within the course and scope of his employment, and under color of federal law.").  Because of that, the Sixth Circuit's decision *expressly acknowledged* that, under the FTCA, Plaintiffs had to exhaust their administrative remedies before filing suit *but failed to do so*:

> The plaintiffs here allege that Quinn, Eaton, and Fitzgerald committed torts in the scope of their federal employment.  Thus, under the FTCA, the plaintiffs had to exhaust their administrative claims before filing a lawsuit.  But the plaintiffs filed suit first.

*Kellom v. Quinn, supra,* at * 3.

Indeed, part of the Sixth Circuit's limited remand was for this Court to consider whether the "amended complaint" that Plaintiffs *"filed post-exhaustion* cures any defect." *Id*. (emphasis

added).  Plaintiffs ignore that the Sixth Circuit found that they prematurely filed suit before

exhaustion.  Thus, they make the above fatally-flawed argument, along with another one that

should be rejected.[3]

Moreover, the Government's brief sets forth a logical and convincing argument as to why

this Court should rule that Plaintiffs' amended complaint, filed post-exhaustion, does not cure

the failure to exhaust administrative claims before filing this case.

It starts by providing context as to why the FTCA's administrative exhaustion

requirement exists in the first place:

> The FTCA requires that parties strictly comply with the Act's
> administrative requirements before filing suit in federal court. 28 U.S.C. §
> 2675(a); *McNeil v. United States*, 508 U.S. 106, 112–13 (1993) ("The most
> natural reading of [§ 2675(a)] indicates that Congress intended to require
> complete exhaustion of Executive remedies before invocation of the judicial
> process."). To initiate the FTCA's administrative process, parties must submit an
> administrative tort claim to the appropriate agency. 28 U.S.C. § 2675(a); *see also
> Allen v. United States*, 517 F.2d 1328, 1329 (6th Cir. 1975). After doing so, a
> party may not file suit until either six months passes or the agency issues a written
> denial, whichever occurs first. 28 U.S.C. § 2675(a).
>
> Congress created the FTCA's administrative exhaustion requirement to
> cure a flaw in the original Act. "Prior to 1966, FTCA claimants had the option of
> filing suit in federal court without first presenting their claims to the appropriate
> federal agency." *McNeil,* 508 U.S. at 113 n.7, 8. This led to an inefficient
> procedure for settling claims, increased litigation costs, and unnecessary
> congestion in the courts. *Id*. As a result, Congress amended the FTCA to require
> plaintiffs to submit their claims to the agency and exhaust administrative remedies
> prior to filing suit. *See* 28 U.S.C. § 2675(a); *McNeil,* 508 U.S. at 112 n. 8; *Mader
> v. United States*, 654 F.3d 794, 797 (8th Cir. 2011) (en banc).

(Govt's Br., ECF No. 244, at 9-10).

---

[3]Beginning on page 14 of their briefs, Plaintiffs appear to argue that Plaintiffs should be
deemed to have administratively exhausted their FTCA claim prior to initiating a FTCA lawsuit
based on this Court's ruling on the Government' motion to dismiss that initially raised that
issue.  But this Court clearly had the discretion to revisit that initial ruling under the law-of-the-
case doctrine. As such, this argument goes nowhere.

The Government stresses that regardless of whether the FTCA's exhaustion requirement is considered to be "jurisdictional" or a claims-processing rule, it is *mandatory*:

> The statute uses unequivocally mandatory language: "An action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate federal agency . . ." 28 U.S.C. § 2675(a). Therefore, whether or not the Court considers § 2675(a) jurisdictional, plaintiffs must comply with the statute. *See, e.g., Gonzalez v. Thaler*, 565 U.S. 134, 146 (2012) ("But calling a rule nonjurisdictional does not mean that it is not mandatory . . . ."); *Copen,* 3 F. 4th at 880 (stating that § 2675(b) "is mandatory" even though it is not jurisdictional).

(Gov't's Br. at 10).

The Government further argues that no equitable exceptions to exhaustion should be applied here and makes two related arguments.

First, the Government argues that, under *McNeil*, a premature FTCA suit cannot be "cured" by exhaustion of administrative remedies while the premature lawsuit is pending. (Gov't's Br. at 12). It argues:

> In *McNeil*, a *pro se* plaintiff filed suit in federal court asserting a tort claim against the United States, but he did not submit an administrative claim to the agency before filing suit. *McNeil,* 508 U.S. at 108. The plaintiff submitted his administrative claim a few weeks later and the agency denied the claim almost immediately. *Id*. After the agency's denial, the plaintiff asked the district court to continue with the lawsuit because the litigation had not made significant progress and it would not prejudice the government. *Id*.
> The Supreme Court held that these reasons did not warrant an exception to the statute's exhaustion requirement and affirmed the dismissal of the plaintiff's suit. *Id*. at 109–13. In doing so, the Supreme Court identified two practical reasons why there will almost never be a circumstance warranting an exception to the FTCA's administrative exhaustion requirement. *See id.* First, it noted that the exhaustion requirement is neither burdensome nor difficult to understand and "given the clarity of the statutory text' . . . the risk that a lawyer will be unable to understand the exhaustion requirement is virtually nonexistent." *McNeil*, 508 U.S. at 113. Second, it noted that, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *McNeil*, 508 U.S. at 113.

19

(*Id.* at 12-13).  Thus, the Government persuasively argues that under *McNeil,* completion of the FTCA's administrative process while a prematurely-filed lawsuit is pending does not "cure" the failure to follow the FTCA's exhaustion requirement.  It also argues that, under the unique circumstances presented here (where the Government notified Plaintiffs' counsel in writing that the lawsuit was prematurely filed and gave it instructions and legal authority as to how to remedy the problem before the statute of limitations expired), no equitable exception to the statute would be warranted in any event.  (*Id*. at 13-14).

Second, the Government's briefs sets forth a compelling argument that a prematurely-filed FTCA suit cannot be "cured" by virtue of filing an amended complaint in the premature action once administrative exhaustion occurs.  It explains:

> The statute requires a plaintiff to completely exhaust administrative remedies before a suit is "instituted." 28 U.S.C. § 2675(a). With respect to this statute, the Supreme Court held that, "[i]n its statutory context, we think the normal interpretation of the word 'institute' is synonymous with the words 'begin' and 'commence.'" *McNeil,* 508 U.S. 106, 112 (1993).
>
> An amended complaint does not "institute," "begin," or "commence" a new action. Amended complaints are creations of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 15. Under the Rules, "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. After commencing an action, a party may amend their complaint under Rule 15, but nothing in Rule 15 indicates that an amended complaint by the same plaintiff against the same defendant based on the same events and asserting the same claim "commences" a new action. *See* Fed. R. Civ. P. 15. Instead, Rule 15 is clear that "[a] party may amend its pleading," but if the party asserts the same claim against the same defendant, the amended complaint "relates back to the date of the original pleading." Fed. R. Civ. P. 15(a), (c)(1). Because an amended complaint relates back "to the date of the original pleading," it cannot "institute," "begin," or "commence" an action as required by § 2675(a). *See McNeil*, 508 U.S. at 112.
>
> This is consistent with a common understanding of the difference between the term "institute," as used in § 2675(a), and the term "amendment" in Rule 15. *See* Black's Law Dictionary (11th ed. 2019) (stating that to "amend" is "[t]o correct or make . . . small changes to . . ."). It is also consistent with case law concluding that an amended complaint does not cure a prematurely filed FTCA suit. *See, e.g., Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("As a

20

general rule, a premature 'complaint cannot be cured through amendment, but instead, plaintiff must file a new suit.'"); *Hoffenberg v. Provost*, 154 F. App'x 307, 310 (3d Cir. 2005) (same); *Norton v. United States*, 530 F. Supp. 3d 1, 8 (D.D.C. 2021) (same); *Toomey v. United States*, No. CIV.A. 5:10-260, 2012 WL 876801, at *4 (E.D. Ky. Mar. 14, 2012) (same); *Booker v. United States*, No. CIV.A. 13-1099, 2015 WL 3884813, at *4 (E.D. Pa. June 24, 2015) (same).

(Gov't's Br. at 14-15).

The Government argues that to allow an amended complaint to cure a prematurely filed

FTCA suit would defeat the purpose of the exhaustion requirement:

> The FTCA's administrative exhaustion requirement was added in 1966 to prevent plaintiffs from filing suit before attempting to settle their claim with the agency. *See McNeil*, 508 U.S. at 112–113 n.7–8. Allowing plaintiffs to file suit before exhausting, then amending their complaint to assert an identical claim would entirely defeat the purpose of § 2675(a). *See McNeil*, 508 U.S. at 112 ("Every premature filing of an action under the FTCA imposes some burden on the judicial system . . ."); *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("[a]llowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless . . . .").

(*Id*. at 16).

This Court agrees, follows *Duplan*, and a long line of similar decisions, and holds that the

amended complaint, filed in *Kellom-I* post-exhaustion, did not "cure" Plaintiffs' failure to

exhaust prior to filing the lawsuit.  The Court therefore re-affirms that the Government is entitled

to summary judgment as to the FTCA claims for failure to exhaust.[4]

## II.   The Government's Renewed Summary Judgment Motion Filed in *Kellom II*

In addition to filing a Renewed Motion for Summary Judgment in *Kellom I* following

remand, the Government also filed a motion in *Kellom II.*

---

[4]Given this ruling, the Court need not consider the Government's additional or alternative challenges.

The Government's brief in support of its motion in *Kellom II* notes that the Sixth Circuit's opinion "focuses exclusively on *Kellom I* and does not address any of the procedural facts or issues in dispute in this case." (Govt.'s Br. at 8 n.1). It also notes that the Sixth Circuit did not reverse or vacate the rulings or judgment in this case. (*Id*. at 2).

Nevertheless, likely out of an abundance of caution, the Government speculates as to what the Sixth Circuit may have meant to do as to this case. (*See* Govt.'s Br. at 2, noting that the Sixth Circuit's decision did not address the rulings in *Kellom II* but speculating that, "presumably" it was to consider whether *Copen v. United States*, 3 F.4th (6th Cir. 2021) has any effect on this Court's reasoning.). The Government's motion then argues that "*Copen* does not relate to the primary basis for the Court's conclusion, it only relates to an alternative and independent reason to reach the same result; therefore, the United States respectfully requests that the Court affirm its earlier ruling and enter summary judgment in its favor." (*Id*. at 2).

Plaintiffs' brief reflects that Plaintiffs' counsel does not know what, if anything, was remanded as to this case. (*See* Pl.'s Br. at 14, asserting that the Sixth Circuit must have intended for the *Copen* case "to be applied here to some effect, otherwise there would have been no issues in need of resolutions to permit the remand in the first place."). So Plaintiff's counsel sees the remand as an open invitation for Plaintiffs to seek relief that was never referenced in the Sixth Circuit's decision. (*See* Pls.' Br. at 24, asserting that upon remand Plaintiffs should now be "allowed to amend their complaint" in this case.).

In light of the fact that the Sixth Circuit's opinion does not address this 2019 case at all, does not specify any rulings in this case that were vacated, or any claims or issues that were remanded in this case, it does not appear that anything was remanded in this case.

Nevertheless, the Government's argument, that *Copen* does not impact the rulings in this case, has merit. That is, this Court agrees with the Government that the claims in *Kellom II* should be dismissed notwithstanding *Copen*. Accordingly, to the extent that anything was remanded in the 2019 case, this Court reaffirms its dismissal of Plaintiffs' claims.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that the Government's Renewed Motion for Summary Judgment in the 2017 case is GRANTED, to the extent that this Court REAFFIRMS the dismissal of Plaintiffs' prematurely-filed FTCA claims under the circumstances presented here.

IT IS FURTHER ORDERED that the Government's Renewed Motion for Summary Judgment in the 2019 case is also GRANTED because this Court agrees with the Government that the claims in *Kellom II* should still be dismissed notwithstanding *Copen*.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: June 21, 2022